THOMAS DYER *vs.* MAINE CENTRAL RAILROAD COMPANY.

Cumberland. Opinion August 27, 1904.

*Railroads. Fire Set by Engine. Negligence. Action. Evidence. Insurance. Subrogation. R. S. 1883, c. 51, § 64. Stat. 1895, c. 79.*

That part of R. S. 1883, c. 51, § 64, as amended by c. 79 P. L. 1895, giving to the railroad company the benefit of any insurance effected by the owner on property injured by fire communicated by a locomotive engine, is limited in its application to those cases in which the liability of the railroad corporation is created by that section and not by its own negligent act.

When the fire is caused by the negligence of the railroad corporation, an insurance company which has paid a policy of insurance upon the property injured, may maintain an action in the name of the owner against the railroad to recover from it the amount so paid, not exceeding the difference between the value of the property and any sum already paid by the railroad company to the owner.

The fact that fire is communicated to property along the line of a railroad by sparks from a locomotive engine raises an inference of negligence, in its construction, equipment or management, sufficient to make out a prima facie case, in the absence of all other evidence as to the manner in which the engine is constructed, equipped or operated.

On report. Judgment for plaintiff.

Action of assumpsit at common law brought by the plaintiff for the benefit of the London, Liverpool & Globe Insurance Co., to recover the sum of two thousand dollars paid by said Company to the plaintiff under a policy of insurance on certain buildings of the plaintiff which were destroyed, as alleged, by fire set by an engine of the defendant negligently constructed, managed and operated by the defendant on its road.

The case was reported to the law court by agreement of the parties, the court to render judgment according to law on so much of the evidence in the case as was admissible.

The case is stated in the opinion.

*Clifford, Verrill & Clifford,* for plaintiff.

It has been held in various cases that, in the absence of any testimony tending to show that a fire caught in any other way, a jury is justified in finding that a fire was started by a spark from a locomotive. *Hagan* v. *R. R. Co.,* 86 Mich. 618; *Union Pacific R. R.* v. *DeBusk,* 3 L. R. A. 350.

The fact that a fire starts soon after a locomotive passes and there is no other evidence of a fire, despite the fact that the engine was equipped with a spark arrester and was not known as a spark thrower, warrants the finding that the fire was set by a locomotive. *Wild* v. *B. & M. R. R.* 171 Mass. 245.

The discovery of a fire on or near a railroad company's right of way shortly after a locomotive has passed warrants the inference that it was set by sparks thrown from the engine, it being a matter of common knowledge that locomotives do emit sparks.  2 Thompson on Negligence, § 2291; *Smith* v. *London and Southwestern R. R.,* L. R. 6, C. P. 14.

It is not necessary to prove by direct evidence in an action for damages for the destruction of property by fire escaping from defendant's railroad that the fire started in its right of way.  *Pittsburg, etc., R. R.* v. *Ind. Horseshoe Co.,* 154 Ind. 322.

It must be borne in mind that the defendants in this case have put in no evidence, the only evidence in the case being that adduced by the plaintiff.  Not one statement made in behalf of the plaintiff in this cause has been denied.  The plaintiff contends that he has made

out a prima facie case of negligence, and that in the absence of any rebutting testimony said prima facie case of presumption of negligence becomes conclusive, for where damage is caused by fire which is proven to have escaped from the engines of a railroad company, a presumption of negligence on the part of the company arises, which casts the burden of proof upon them to show affirmatively the absence of negligence. *Karsen* v. *Milwaukee & St. Paul R. R.,* 29 Minn. 12.

The fact that fire or sparks in unusual quantities escaped from an engine will of itself warrant the presumption that the appliances for preventing the escape of fire were inadequate and ineffective. *C. & N. W. R. R.* v. *McCahill,* 56 Ill. 28; *Field* v. *N. Y. Central R. R.,* 32 New York, 339.

Payment by the insured before suit brought does not effect the right of action. *Webber* v. *Morris & Essex R. R.,* 35 N. J. L., 410.

The insurer's position is practically that of surety, and as such, if he pays the loss of a part thereof, he is entitled to be subrogated to the extent of the amount paid. 4 Joyce on Insurance, § 3574.

By payment of loss insurers become subrogated to rights of insured against wrong doers whose negligence causes the destruction of the property on which the insurers paid the loss. *Pratt* v. *Radford,* 52 Wis. 114.

As to the bringing of the action in the name of Dyer, it is contended that by common law procedure action by insurance companies must necessarily be brought in the name of the insured. *Pratt* v. *Radford,* 52 Wis., 114.

*Nathan & Henry B. Cleaves and Stephen C. Perry,* for defendant.

The testimony in the case does not sustain the allegation of defendant's negligence as set out in the plaintiff's writ. It is true that the testimony of Thomas Dyer shows that his buildings were destroyed by fire, and that he received from the Liverpool, London and Globe Insurance Company as insurance on his buildings, the sum of $1,980 on account of the destruction of said buildings. There is no direct positive testimony, however, that the fire was caused by the defendant company.

There is no testimony whatever in the case that the fire was set by

a locomotive of the defendant company or that the defendant in any way caused the fire. It may be argued in behalf of the plaintiff that the defendant company felt that it was responsible for the fire and the loss of the buildings, and as evidence thereof the payment made by the defendant company to Thomas Dyer of $1,120 will probably be cited to substantiate that theory. Should it be so argued, then the answer thereto is that this payment is not proof positive that the company was responsible for or caused the fire, but that the payment was made to save controversy and the expense of a lawsuit.

Even if the testimony was full and convincing that these buildings were in fact destroyed by fire communicated by a locomotive engine of the defendant company, this plaintiff could not recover in this action. If this plaintiff has any cause of action it is by reason of the provisions of the statutes of this State, and under the provisions of these statutes, and under the decisions of this court, the plaintiff cannot prevail in this action.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, POWERS, PEABODY, SPEAR, JJ., EMERY, J., DISSENTING.

POWERS, J. This is an action at common law, brought for the benefit of the Liverpool, London and Globe Insurance Company, to recover the amount of insurance paid by it to the plaintiff upon his buildings in Freeport, alleged to have been destroyed by fire communicated by sparks escaping from the locomotive engine of the defendant through its negligence in the construction, equipment, management, and operation of the same. The defendant has already paid to the plaintiff the full amount for which it is liable under R. S. 1883, c. 51, § 64, as amended by c. 79 of the laws of 1895, and insists that it is under no further liability. That statute is as follows: "When a building or other property is injured by fire communicated by a locomotive engine, the corporation using it is responsible for such injury, and it has an insurable interest in the property along the route, for which it is responsible, and may procure insurance thereon. But such corporation shall be entitled to the benefit of any insurance upon such property effected by the owner thereof

less the premium and expense of recovery. The insurance shall be deducted from the damages, if recovered before the damages are assessed, or, if not, the policy shall be assigned to such corporation, which may maintain an action thereon, or prosecute, at its own expense, any action already commenced by the insured, in either case with all the rights which the insured originally had."

Independently of any statute and prior to the enactment of c. 9, § 5, of the laws of 1842, the owner of property had the right at common law to recover damages sustained by fire communicated from a locomotive engine through the negligence of the railroad company using it. The act of 1842, which continued unchanged until 1895, broadened the liability of a railroad company so that it was made to embrace all cases of fire communicated from its locomotive engine. It was no longer necessary to allege and prove negligence in the use of the engine, and the statute in effect made the railroad company an insurer. If the property damaged was insured, the insurance company was entitled to subrogation. In such case, the owner might collect of either party that he saw fit. If from the insurance company first, then that fact constituted no defence for the railroad company, and any sum collected by him, in excess of what was necessary with the insurance to compensate him for his full loss, he held in trust for the insurance company. If, on the other hand, he collected from the railroad first, he thereby diminished to the same extent his claim against the insurance company. Both were insurers, the insurance company by virtue of its voluntary contract, and the railroad company by force of the statute which imposed the liability upon it. The liability of the railroad company was however primary and that of the insurance company secondary, not in point of time, but in point of ultimate liability. *Hart et al.* v. *Western R. R.*, 13 Metcalf, 99.

In this state of the law the statute was amended by c. 79, of the laws of 1895, giving to the railroad the benefit of any insurance upon the property, and providing that the insurance should be deducted from the damages if recovered before they were assessed, or if not, that the policy should be assigned to the railroad corporation which might then maintain an action thereon with all the rights of the

insured. This amendment had special and particular reference to the adjustment of the liability of the two insurers, the insurance company and the railroad company, in those cases falling under the section which was amended, and in which it was necessary for the owner to invoke the statutory liability of the defendant corporation in order to recover against it. The legislature might well deem it just that, as between the voluntary insurer by contract and the one who without fault on its part is made such by law, the latter should have the preference. To go further and say that in a case where the railroad company is liable because of its own fault and negligence, and not as an insurer, it should have the benefit of any insurance effected by the owner upon such property, would be a manifest injustice. The consequence of the defendant's negligence would then fall not upon itself but upon the insurance company, not upon the guilty but upon the innocent. We can not believe that a result so repugnant to justice could have been within the legislative intention. This action, therefore, may be maintained notwithstanding the amendment of 1895. That act is limited in its application to those cases in which the section amended makes the railroad company an insurer, in other words, to those cases in which the liability of the defendant is created by that section and not by its own negligent act.

The result here reached, is not in conflict with *Leavitt* v. *C. P. Ry. Company*, 90 Maine, 153. In that case it was admitted that fire was communicated without fault or negligence on the part of the defendant, thus clearly presenting a state of facts under which the railroad was chargeable, not at common law, but solely because of its statutory liability. We are aware also that the right of subrogation was denied to the insurance company under a similar statute in *Lyons* v. *Boston & Lowell R. R.*, 181 Mass. 551; but that, like *Leavitt* v. *C. P. Ry.*, supra, appears tò have been an action based upon the statutory liability of the defendant and the questions here decided were not raised or considered.

This case comes before the court upon report and the defendant contends it is not liable upon the facts. The undisputed facts are that on the date in question the defendant's locomotive engine, sending out an unusual amount of smoke and cinders, passed over its

road through the plaintiff's farm and about three hundred feet from his buildings. There was no fire seen before the train passed but it was discovered shortly after in the grass near the railroad track, extending from the banks of the railroad to the plaintiff's buildings which it consumed. No attempt is made to account for the fire at this time or place upon any other hypothesis, and we think it is a fair inference that the fire was communicated by sparks from the defendant's locomotive. *Gibbons* v. *Wis. Valley R. Co.*, 66 Wis. 161; *C. & A. R. R. Co.* v. *Esters*, 178 Ill. 192; *Smith* v. *London & S. W. Ry. Co.*, 5 C. P. 98, 13 Am. & Eng. Ency. Law, 2 ed. 513.

The plaintiff must still prove that the defendant's negligence was the cause of the fire, and there is no evidence of any negligence on the defendant's part unless negligence in the construction, equipment or management of its locomotive engine can be inferred from the fact that the fire was communicated by sparks from it. On the question whether that fact alone is sufficient to make out a prima facie case of such negligence there appears to be an irreconcilable conflict of authority. The most respectable courts after careful consideration have arrived at directly contrary conclusions. On the one hand it has been held that no such presumption arises, because first, the defendant is carrying on a lawful business in a lawful manner, and second, that sparks and coals may escape notwithstanding all the safeguards have been adopted which modern science can suggest, and the greatest skill and care are employed in the operation of the engine. On the other hand we may well presume that the defendant is not running locomotives over its road the natural and probable effect of which would be to communicate fire to the property along its route if the locomotives were properly equipped and carefully managed, and when fire is so communicated the natural presumption is that it is due to negligence. More than that, such a presumption has its foundation in the necessities of the case. The locomotives of railroad companies by night and day rush with great velocity through the land. They are here today and tomorrow may be hundreds of miles away. They are within the control of the defendant. The method of their equipment and manner of their operation are known

to its employees who are always present with the engine, and evidence touching this subject is easy of production on its part. The owner of the property destroyed has no such opportunities of knowledge. It may be often exceedingly difficult if not impossible for him to even identify the engine which has caused the injury, or to obtain the names of those who know about its equipment or its use. He is frequently absent, and if present at the time and place of the fire he can obtain but a momentary view of the locomotive. He has no opportunity for inspection and knows nothing of its equipment and management. He can judge only by the result, and can often obtain no other proof as to whether the injury which he suffers has been caused by negligence. It is similar to those cases in which the burden of proof is cast upon him who best knows the facts. In this state the question is a new one. We are at liberty to adopt that rule which seems to us most consonant with reason and justice, and we think that negligence in the construction, equipment or management of the defendant's locomotive engine may fairly be inferred from the fact that the fire was communicated by sparks from it, and that there being no evidence or circumstances to rebut that inference, it is sufficient to enable the plaintiff to make out a prima facie case of negligence and maintain this action. This view is amply supported by the following among many authorities: *Chicago B. & Q. R. R.* v. *Beal,* 94 N. W. 956, 14 Am. Neg. R. 133; *Illinois Central R. R. Co.* v. *Mills,* 42 Ill. 407; *Spaulding* v. *Chicago & Northwestern R. Co.,* 30 Wis. 110, 11 Am. Rep. 550; *Idem* v. *Idem,* 33 Wis. 83; *Gulf Ry. Co.* v. *Benson,* 69 Tex. 497, 5 Am. St. Rep. 74; *Clemens* v. *Hannibal & St. Jo. R. R. Co.,* 53 Mo. 366, 14 Am. Rep. 460; *Barker* v. *Louisville & Nashville R. R.,* 7 Heisk. 451, 19 Am. Rep. 618; *Hull* v. *Sacramento Valley R. R. Co.,* 14 Cal. 387; *Louisville & C. R. R. Co.* v. *Marbury Lumber Co.,* 132 Ala. 520, 90 Am. St. Rep. 917; *Idem* v. *Reese,* 85 Ala. 497, 7 Am. St. Rep. 66. "In the case of railroad engines it has been repeatedly decided that the fact that the fire had been communicated by them to the premises is sufficient to raise a presumption that the railroad was not employing the best known contrivances to retain the fire and to make out a prima facie case of negligence." Cooley on Torts, 2 ed. 702. In

the closely analogous case of *Dunning* v. *M. C. R. R. Co.*, 91 Maine, 87, this court felt the necessity of applying to locomotives a somewhat more liberal rule of evidence than is applied in other cases.

*Lowney* v. *N. B. R. R. Co.*, 78 Maine, 479, is not an authority to the contrary. That the case differed from the present in two all important particulars; first, there does not appear to have been any sufficient proof that the fire was in fact communicated by the defendant's locomotive engine, and second, the defendant introduced evidence tending to show that there was no negligence in either the equipment or operation of the locomotive. After stating that it might be doubted whether there was sufficient proof that the fire was communicated by the locomotive the court say: "The negligence must be proved. Its relation as the efficient cause of the fire must also be proved. In this case we find no evidence of such negligence, nor of its casual relation. It is urged in the argument for the plaintiff that the dampers were probably open, or warped, or that ignited coals may have been blown out of the ash pan, or that the smoke stack might not have had proper appliances to arrest sparks. We do not find the evidence of them however. Indeed what evidence there was upon these points seems to negative the plaintiff's suggestions." If there was no sufficient proof that the fire was communicated by the defendant's locomotive, the question of negligence could not arise. If there was such proof then the evidence negatived the claim of the defendant's negligence. The question whether when the fire is in fact communicated by the locomotive and there is no evidence as to its manner of construction, equipment and operation, negligence in one of those particulars may fairly be inferred from the escape of the sparks in such quantity and manner as to cause the fire, was not before the court in that case.

The value of the property destroyed was $2800 and the defendant has paid to the plaintiff $1120.

*Judgment for plaintiff for $1680 and interest*
*from the date of writ.*

## DISSENTING OPINION.

EMERY, J.   While a steam locomotive of the defendant railroad company was in lawful operation, drawing a train of cars, sparks escaped from it setting fire to the plaintiff's property.   Despite the able reasoning of the majority opinion and the citations in support of it, I am unable to assent to the proposition that this escape of sparks, nothing further appearing, is sufficient evidence to establish negligence in the equipment or operation of the locomotive.   I think there is danger in the proposition justifying me in attempting to show reasons against it.

I.   Apart from authority, the proposition seems to be based on the assumption that locomotives are ordinarily so equipped and managed as not to set fire to property along the route.   The argument seems to be that the setting of fires by sparks from a passing locomotive is exceptional, and therefore indicates some fault in equipment or operation.   I deem the argument faulty in that it deals with the setting of fires instead of the escape of sparks; confounds the consequences, which may or may not ensue, with the act which is the subject under consideration.   While the setting of fires by them may be very exceptional, the escape of sparks may nevertheless be of daily and hourly occurrence.   Sparks may or may not set fires after their escape according to events and conditions entirely outside of the railroad company's sphere of action or duty, as high winds, severe droughts, etc.   Whether a given act or omission is negligent is not determined by its consequences.   So whether a primary result is evidence of negligence is not determined by a secondary result.   The negligence of the defendant, if any, was in the act or omission through which the sparks escaped, not in the escape itself.   Hence while the setting of fires may be evidence of the escape of sparks, it is not evidence of the cause of that escape, whether from accident or negligence.

It would seem to follow that the assumption, however indisputable, that locomotives are ordinarily so equipped and operated as not to set fires does not sustain the proposition that the escape of sparks from a passing locomotive indicates fault in equipment or operation.

I think to sustain the proposition the assumption must be as broad as this, viz: that locomotives can be so equipped with known appliances and so operated in known modes that sparks will not ordinarily, or often, escape from them while in operation.  There being no evidence whatever in the case upon this point, the assumption must be from common knowledge so common and undisputed that the court can act upon it without evidence.  If the assumption has not this foundation it must fall, and the argument with it.

Is it common knowledge, and undisputed, that such appliances exist and that such modes of operation are known?  I must confess my own ignorance of them.  I do not understand it is claimed to be knowledge so common and undisputed; and whoever will observe the amount of cinders strewing the sides of railroad tracks and will observe the smoke stacks of locomotives running at night will find, I think, much evidence to the contrary.

II.  As to authorities; it is frankly admitted in the opinion that no case in this state has gone so far.  It is also frankly admitted that eminent courts hold adversely to its view, while claiming support in the decisions of many other courts.  Cases are cited in such support from Illinois, Wisconsin, Texas, Missouri, Tennessee, Alabama and California.  I will not stop to inquire how far these decisions have been influenced by the statutes of those states or by other circumstances, nor will I burden the reader with citations of cases the other way, for I think the proposition is in conflict with the declarations and even decisions of our own court.  In *Sturgis* v. *Robbins*, 62 Maine, 289, a case of fire escaping and causing injury, the court said on page 290, "It is not to be presumed that an act lawful in itself was not done at a suitable time and in a careful and prudent manner."  In *Nason* v. *West*, 78 Maine, 253, the court said on page 256, "Presumption of negligence from the fact alone that an accident happened, will not do, for if there is any presumption in such a case it is that the defendants have complied with the obligations resting upon them equally with other men."  In *Pellerin* v. *Paper Co.*, 96 Maine, 388, the court on page 391 quoted the above expression from *Nason* v. *West*, and added, "No presumption of negligence arises from the

mere fact that an accident has happened." In *Leach* v. *French*, 69 Maine, 389, the court said on page 393, "negligence and mis-doing are not to be presumed; there must be positive evidence of them." .In *Lowney* v. *Railway Co.*, 78 Maine, 479, a case of fire communicated by a locomotive, the court said on page 480, "The burden upon the plaintiff therefore was, to prove, not only that the fire was communicated by the engine, but also that the defendants were guilty of negligence and that their negligence was the cause of the communication of the fire. The communication of the fire alone does not import negligence." This seems quite an explicit declaration and intentionally made. It is sought to distinguish the two cases, but I think the reader of both opinions will be convinced that the court in the Lowney case was pressed with the same proposition, and considered it and intentionally pronounced against it. It will hardly be suggested that the concurring justices would have permitted such an explicit declaration to pass them unchallenged if they did not fully agree with it.

But, further, I think the court has also expressly and necessarily adjudicated upon the principle involved. *Batchelder* v. *Heagan*, 18 Maine, 32, was, like this, a case of escaping fire, where fire lawfully upon the land of the defendant, but which he was by law bound to carefully guard and manage to prevent its escape to the lands of others, did escape to land of the plaintiff and set fire there. It was stoutly contended in that case, as in this, that the escape of the fire alone, if unexplained, was evidence of the defendant's negligence in the premises. The court squarely held that it was not. *Sturgis* v. *Robbins*, 62 Maine, 289, was a similar case. The fire set by the defendant on his own land had escaped therefrom and set fire to property of the plaintiff. The plaintiff's counsel in effect advanced the same proposition, to wit:—that the mere escape of the fire indicated that the defendant was in fault either in the time or manner of building his fire, which he must disprove or be held liable. The court held directly the contrary.

I do not find that either of these cases has since been questioned though the escape of fire from lands and locomotives has been of frequent occurrence. They seem to me not distinguishable in principle

from the case at bar. The defendant company had the right (as good as that of the farmer) to build and maintain fires in its locomotives as they lawfully passed by and near the plaintiff's buildings. In this particular case it was not bound as an insurer but only bound to use due care to prevent the escape of the fire. If the escape of fire from the land of the farmer does not indicate fault in him which he must disprove, I do not see how the escape of sparks from the running locomotive of a railroad company indicates fault on its part which it must disprove.

III. But the majority opinion seems also to be based on the difficulty of the plaintiff in such cases as this, in finding any other sufficient evidence of the defendant's negligence. It seems to be urged that it is so much easier for the defendant to prove that it was careful than for the plaintiff to prove that it was careless, it should be required to do so. Is not this in effect equivalent to saying that whenever the plaintiff cannot prove the defendant's fault in a matter, the fault should be assumed and the burden be put upon the defendant to prove his innocence? How can this doctrine be limited, without obnoxious discrimination, to actions against railroad companies? Why is it not equally applicable to every case where the court thinks it easier for the defendant to prove his innocence, than for the plaintiff to prove the fault or wrong? Is it not destructive of the presumption of innocence which has hitherto protected persons accused of negligence or any other tort or crime?

I think this court has never before intimated any approval of such a doctrine as applicable to a case where fault is necessary to be shown. In the case, *Dunning* v. *M. C. R. R. Co.*, 91 Maine, 87, cited in the opinion, no fault was to be proved. The company was an insurer. It was only necessary to prove the communication of fire from the locomotive. Here it was necessary to prove that, and also the defendant's fault in the matter. On the other hand, the court seems to have been pressed at times with the argument that when circumstances render affirmative proof of some essential element in the plaintiff's case difficult or impossible, the court should assume it to exist unless disproved; yet the court, while sometimes recognizing the hardships, has never dispensed with the proof. *McLane* v. *Perkins*, 92 Maine, 39, and cases already cited.

The legislature, upon whom such arguments should be urged rather than upon the court, can meet the difficulty by imposing liability as insurer instead of mere liability as wrong doer. It has done so in the case of fires communicated by locomotives, and has thus relieved persons injured by such fires from the burden of proving the fault of the owner or operator. It is competent and I think expedient for the legislature to do so; but it seems to have left this plaintiff under the circumstances of this case to prove the fault of the company as a prerequisite to recovery of damages from it. I think, therefore, the court should continue to hold in this case as it held in *Bachelder* v. *Heagan*, and *Sturgis* v. *Robbins*, supra, and as it at least declared in *Lowney* v. *Railway Co.*, supra, that the mere escape of fire, lawfully upon the defendant's property serving him in a lawful business, is not evidence of his fault; that the difficulty of proving his fault does not cast upon him the burden of disproving it.