# Louisville & Nashville Railroad Company v. Marbury Lumber Company.

*Action for Damages for Negligently Destroying Property by Fire.*

[Decided June 28, 1902.]

1. *Negligence in setting fire to property; burden of proof.*—In an action against a railroad company to recover damages resulting from fire alleged to have been caused by the negligent escape of sparks from a locomotive, the burden is on

plaintiff to show that the fire was caused by sparks emitted from defendant's locomotive, proof of which fact raises a presumption of negligence.

2. *Same; spark arresters and appliances; burden of proof.*—The plaintiff having proved that the fire was caused by sparks emitted from defendant's locomotive, the burden then devolves upon defendant of showing that the engine alleged to have caused the fire was properly constructed, equipped with approved appliances to prevent the escape of sparks, was in good repair and prudently managed and controlled: proof of which fact devolves the burden on plaintiff of showing other specific acts of negligence or want of care on defendant's part.

3. *Evidence as to cause of fire; circumstantial evidence; character of weather.*—Where the evidence as to the origin or cause of the fire is circumstantial, the fact that the weather had been dry and clear for several days before the fire is admissible, in connection with other circumstances tending to show that the fire was caused by sparks emitted from defendant's engine.

4. *Same; evidence as to character of train, whether light or heavy.*—In such case it is pertinent to inquire as to whether a train, which a witness saw emitting sparks shortly before the fire, was a light or heavy train: it being common knowledge that a light train would likely emit fewer and smaller sparks than a heavy one, and the number and size of the sparks being a circumstance to be considered in determining whether the train was properly equipped and handled.

5. *Error without injury in ruling on question; failure to answer.* Where a question as asked is not answered, error in allowing the question is without injury.

6. *Fires; evidence; running behind time or faster than usual.* In an action for damage caused by fire alleged to have been set by a locomotive, the fact that the train, which is claimed to have emitted the sparks, was running behind time or faster than usual, is competent to be considered, in determining whether the fire occurred by reason of sparks from the engine and whether the train was being operated with due care.

7. *Size of sparks emitted; evidence.*—Where a witness testified that the sparks emitted by defendant's engine, which passed just before the fire started, were as large as his little finger, another witness, testifying as an expert, and who had heard all the evidence, may be asked by plaintiff, "If the netting

to that engine was such as has been testified to here and it was in good repair and condition, would it throw out sparks as large as the end of your little finger?"

APPEAL from Autauga Circuit Court.

Tried before Hon. N. D. DENSON.

This was an action on the case brought by the Marbury Lumber Company against the Louisville & Nashville Railroad Company for the alleged negligent destruction of seventy bales of cotton, the property of appellee. There was a verdict and judgment for plaintiff for $2,678.66. For report of case on former appeal see 125 Ala. 237.

The opinion sufficiently shows the facts, except as to defendant's refused charges. Those charges were as follows: (B.) "The court charges the jury that the plaintiff having failed to show the velocity of the wind or the condition of the atmosphere, the jury cannot infer from the fact of the fire that the defendant was guilty of negligence." (O.) "The testimony of Engineer Woods that when the engine passed the cotton pen it was handled in a careful and skillful manner is uncontradicted." (L.) "The court charges the jury that evidence which merely tends to show that the cotton was fired by sparks escaping from the engine does not cast on the defendant the burden of showing that the engine was properly equipped with the appliances for the prevention of escaping sparks, in use on the best equipped railroads, and was carefully and prudently managed." (K.) "The burden is on the plaintiff, under the evidence in this case, to show some positive act of negligence on the part of the defendant in the equipment or management or condition of engine at the time of the fire." (C.) "The court charges the jury that there is no evidence in this case of any unusual fall of sparks at or opposite the place where the cotton was stored." (A.) "If the jury believe the evidence in this case, they must find for the defendant." (N.) "I charge you, gentlemen of the jury, as matter of law, that the mere fact that the fire originated from sparks emitted from an engine is not sufficient to cast the bur-

den on the defendant to show that its engine was properly equipped and carefully and skillfully managed."

THOS. G. & CHAS. P. JONES and ALEX C. BIRCH, for appellant.—(1.)  The question asked the witness Bledsoe was improper.—*L. & N. R. R. Co. v. Reese*, 85 Ala. 497.  (2.)  The fact that the train was behind time, or it speed, was not competent evidence.—*Perdue v. L. & N. R. R. Co.*, 100 Ala. 535; 32 A. & E. R. R. Cases, 114; 3 Va. 851 79 Va. 241.  (3.)  Charge L should have been given.—*L. & N. R. R. Co. v. Malone*, 109 Ala. 516; *Reese's Case*, 85 Ala. 497.  (4.)  Defendant was entitled to the general affirmative charge.—*Tinney v. Cen. of Ga. Ry.*, 30 So. Rep. 623; *Binion's Case*, 98 Ala. (5.)  Charge N was proper.—6 Rap. & Mack's Digest of Ry. Law, p. 801, § 55; *Binion's Case*, 98 Ala.

WATTS, TROY & CAFFEY, for appellee.—(1.)  The evidence as to the condition of the weather was admissible. *Beggs v. R. Co.*, 75 Wis. 444; *Chicago, etc., R. Co. v. Quaintance*, 58 Ill. 389; *L. & N. R. R. Co. v. Malone*, 109 Ala. 509; *Sheldon v. Hudson R. Co.*, 14 N. Y. 224; 67 Am. Dec. 155; *Union P. Co. v. DeBusk*, 12 Colo. 294; 13 Am. St. Rep. 221; *Home Ins. Co. v. Pennsylvania R. R.*, 11 Hun. 182.  (2.)  The evidence of the witness Bledsoe was admissible.—*Davidson v. Kahn*, 119 Ala. 369; *McCoy v. Watson*, 51 Ala. 466; *Griffin v. State*, 76 Ala. 29; *Belmont, etc., v. Smith*, 74 Ala. 206.  (3.)  The speed of the train was pertinent.—*McCormick v. Chicago, etc., R. Co.*, 41 Iowa 193.  (4.)  Defendant was not entitled to the general affirmative charge.—*L. & N. R. R. Co. v. Marbury Lumber Co.*, 125 Ala. 237; *L. & N. R. R. Co. v. Malone*, 109 Ala. 509.

HARALSON, J.—1.  The principle is well established in this court as a rule of evidence, that in an action against a railroad company to recover damages resulting from fire alleged to have been caused by the negligent escape of sparks from a locomotive running on defendant's road, the burden is on the plaintiff, in the first instance, to show that the fire was caused by

sparks emitted from defendant's locomotive, and when it is shown that the fire was thus caused, which is, when disputed, always a question of fact for the jury, the mere communication of the fire from the railroad engine, is of itself sufficient to raise a presumption of negligence against the company. With this *prima facie* proof of defendant's liability raised in plaintiff's favor, the burden is then devolved upon the defendant of showing that the engine alleged to have caused the fire was properly constructed, was equipped with approved devices and appliances to prevent the escape of fire and sparks, was in good repair and prudently managed and controlled; and upon proof of these facts by the defendant, the presumption arising from the mere communication of fire from the engine is rebutted, and the plaintiff cannot recover, without making proof of other specific acts of negligence or want of care on defendant's part.—*L. & N. R. R. Co. v. Reese*, 85 Ala. 497; *L. & N. R. R. Co. v. Marbury L. Co.*, 125 Ala. 237.

2. The cotton destroyed was situated in a pen on the right hand or north side of the railroad running towards Birmingham from Montgomery, at which point, it appears the track ran east and west. The pen was about 50 feet 6 inches from the center of the track. A freight train had, only a few minutes before, passed up, when the cotton was discovered to be on fire. The train, as the evidence tended to show, was a short one, consisting of about fifteen cars attached to the engine, the grade was ascending at the point, the train was moving rapidly, and the engine was emitting an unusual quantity of sparks, larger than engines generally emit; that the day was clear and rather windy, the wind blowing in the direction of the cotton,—from a southeastern direction and in a northwesterly direction, and there was no fire in any of the houses or structures near the cotton. Here, the witness testifying to these facts for plaintiff, was asked: "Had it been raining the day before the accident, or had it been dry weather?" to which question, he replied, that the weather had been clear for several days. The defendant objected to the question on the ground that it was irrelevant, incompetent

and inadmissible, shedding no light as to what condition the engine was in. The objection was properly overruled. The burden was on the plaintiff, to introduce evidence, to show that the fire originated from the passing engine, and any circumstance tending to show that it did thus originate was competent. The proof of how the fire originated was entirely circumstantial. If the weather had been clear and dry and not rainy, for several days previous to the accident, it was a circumstance competent to be considered, in connection with the other evidence, as tending to show that the fire might have originated more readily from the engine, and did so originate, and that if the weather had been rainy and damp, the fire might not have so readily been communicated to the cotton by sparks, the distance it was away from the engine.

3. The witness, Bledsoe, testified that he was within 6 or 8 feet of the track when the engine passed; that there were a good many sparks coming out when the train passed, and a heap of them fell on the platform of the store near-by, and were about the usual size. He was asked, "Was it a light train or a heavy train?" He answered that it was a light train, and in answer to another question, he did not count the cars, but there seemed to be 14 or 15 of them. The defendant objected to the question on the grounds that it called for incompetent and irrelevant evidence, and because the character of the train had nothing to do with the condition of the engine. While the latter objection,—the one relied on to show the incompetency of the evidence,—may in point of fact have been true, whether the train was a light one or a heavy one, in the number of cars of which it consisted, yet if it was a heavy train, consisting of a great number of cars, it is common knowledge that it would have required a greater expenditure of effort, so to speak, on the part of the engine, and a greater exhaust of steam by it, especially when moving rapidly, up grade, than would have been the case, if the train were a short one, requiring less power to move it, a condition when fewer and smaller sparks would likely be emitted, than if the engine were drawing a heavy train. The

number and size of the sparks was a circumstance to be considered in determining whether the train was properly equipped and handled.

4. Becket, as an expert witness for defendant, testified as to the construction of engines and appliances for preventing the escape of sparks—stating that there had been some changes in material in them during the past twenty years, and they had been trying to better them but had not succeeded; said that what he called standard netting was the same as it was the first time he saw a spark arrester, about 20 years ago; that sometimes the netting had to be cleaned, and a man would pound it with a piece of iron. He was asked on the cross by plaintiff in this connection, "Is not that iron liable to increase the size of the spaces?" He answered, "Not unless it is punched; they merely take a piece of iron and jar it out of the netting, and this would not affect the netting unless they punched a hole through it." There was no proof that the netting had been punched, and if there was error in allowing the question, it was error without injury, since the question as asked was not answered, and the answer given, was entirely without prejudice to defendant.

5. Woods, the engineer who handled the train at the time of the accident, testified for defendant that the more force that was used, the greater the number of sparks, and that he was running 25 or 30 miles an hour, when he passed Bozeman—the place the fire occurred. He was asked by plaintiff in this connection,—"Now is it not a fact that your train was running behind time, and that you were running faster to make up that time?" The defendant objected on the ground that the evidence called for was incompetent, irrelevant and inadmissible. In *Perdue v. L. & N. R. R. Co.*, 100 Ala. 539, the court stated, that as a matter of law, it cannot be said that any rate of speed of a railroad train, away from those places where the statute regulates it, is negligence *per se*, and that, whether or not rapid running, at points not regulated by statute, would be negligence, would depend upon the conditions under which it

might be maintained. Nor was the fact of being late and running behind time evidence *per se* of negligence. *N. & W. R. Co. v. Ferguson,* 79 Va. 241; *N. Y. & P. R. Co. v. Kellan,* 83 Va. 851. But it has been held, in an action for damages for fires alleged to have been caused by a locomotive, that the excessive use of steam is a fact competent to be considered, in determining whether or not the company exercised due diligence in the operation of the train, and on the question as to whether the fire occurred by reason of sparks from the engine.—*McCormick v. C. R. & I. Co.,* 41 Iowa, 193; *Home Ins. Co. v. P. R. Co.,* 11 Hun., 182; *U. P. R. Co. v. DeBusk,* 12 Colo. 294. The witness did not answer the question in full, but replied, simply, "I was late," without stating that he was "running behind time," and was "running faster to make up that time," as he was asked. The answer he made, did not, without more, imply that he was making up time and running faster in order to do so. It was neither favorable nor unfavorable to either party, and, even, if the question ought not to have been allowed, it was without injury to defendant.

6. Thornton, a witness for plaintiff, had testified that the engine when it passed emitted sparks as large as the end of his little finger, and Billingslea, that the sparks were as large as a cow pea. Gross, a witness for the plaintiff, an experienced engineer, testified that he had heard all the testimony in the case about the fire, and how the engine was equipped. He was asked: "If the netting to that engine was such as has been testified to here, and it was in good repair and condition, would it throw out sparks as large as the end of your little finger?" The defendant objected on the ground that there was no testimony that the sparks were as large as the little finger of witness. Thornton and Billingslea were allowed to be recalled, each of whom exhibited his little finger to the witness. The witness did not answer the question. But, he was asked another question, "Do you know what size sparks would emit?" He answered that no engine in proper condition should have thrown sparks as large as a cow-pea, and as large as

a pin head, and to this question and answer no objection was made. We find no error here.

7. The court gave several charges requested by defendant, and refused several. The vices of those refused, without reviewing them separately, will appear. We have examined them, and conclude they were properly refused.

A motion was made for a new trial, based on rulings assigned as errors and which we have been considering: It was overruled and we find no occasion for disturbing the verdict and judgment.

Affirmed.