# Mobile Light & Railroad Co. *v.* Roberts.

## *Death Action.*

(Decided May 13, 1915. 68 South. 815.)

1. *Negligence; Evidence; Sufficiency.*—One charging negligence as the proximate cause of a wrong and injury cannot recover therefor unless a definitely charged breach of duty causing the injury is shown by the evidence, and the evidence, the inferences therefrom, or the distinct presumptions raised thereby, must point, at least in their tendencies to the breach of the duty charged; conjecture or speculation cannot afford even prima facie support for the charge.

2. *Street Railways; Death Action; Evidence.*—The evidence examined and held insufficient to support a verdict for the plaintiff suing as administratrix for the death of her intestate caused by being struck by a street car.

3. *Same; Duty of Motorman; Presumption.*—A motorman of a street car may rely upon the presumption that an adult traveler or pedestrian on a public thoroughfare will not subject himself to danger from an approaching car, or will leave the zone of danger created by its operation, until due prudence, suggested by the circumstances open to his observation indicates that he cannot further rely thereon.

4. *Same.*—Where the only eye witness, the motorman, testified that deceased, when in a place of safety, and after seeing the approaching car within six or eight feet of a point on the track opposite that at which he was then safely standing, moved into danger in front of the car, and was hit thereby, such testimony was not reflected upon, nor was it contradicted by an obvious, intrinsic impossibility nor by the presumption that a normal adult will not deliberatey bring about his own destruction, notwithstanding the rule that testimony not positively opposed may have its credibility reflected upon, or may be contradicted by circumstances, or by its obvious, intrinsic impossibility; the act of the deceased as shown by. the testimony of the motorman being attributable to a want of care, or a mistake as to his location with reference to the track upon which the car was running, and not to a purpose to commit suicide.

5. *Same; Jury Question.*—Where the motorman's evidence was unreflected upon in any degree and uncontradicted, and was entirely exculpatory, there was no question for the jury, notwithstanding such testimony was given by the employee of defendant, whose wrong was charged to have rendered the defendant liable.

6. *Same.*—Where the uncontradicted testimony of the motorman showed that the person struck by the car moved from a place of safety into danger in front of a car, after seeing the approaching car within a few feet of the point at which he was then standing, it showed contributory negligence on the part of the person struck, and that the speed of the car was not the proximate cause of the death, whether that speed be great or not.

APPEAL from Mobile Law and Equity Court.

Heard before Hon. SAFFOLD BERNEY.

Action by Mary Roberts, as administratrix, against the Mobile Light & Railroad Company, for damages for the death of her intestate. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

GREGORY L. & H. T. SMITH, for appellant.

LYONS & COURTNEY, and STEVENS, McCORVEY & McLEOD, for appellee.

McCLELLAN, J.—Plaintiff's intestate, Roberts, was killed by defendant's electrically driven street car, at a point in Royal street a little north of its intersection with Madison street, in the city of Mobile. The cause of action was stated in two counts submitted to the jury, viz., the first and third counts. The former declared generally upon the negligence of defendant's motorman in the management of the street car on that occasion; and the latter count ascribed intestate's death to the failure to exercise due care and diligence to avert his injury after the motorman became aware of intestate's peril.

Aside from testimony descriptive of the character and location of wounds on the body of intestate, and a map showing the locus in quo, and some testimony tending to show that the car was driven at a high speed, there were but three witnesses examined on the trial whose testimony could have any bearing upon the controlling material issues presented by the counts mentioned. These were Ruth Wilson and Jerry Miles, introduced by the plaintiff, and Ernest Graham, the motorman, introduced by the defendant. The single contention made for appellant (defendant) is that the trial court erred

in refusing to give the general affirmative charge for the defendant, upon its request.

Neither Ruth Wilson nor Jerry Miles were eyewitnesses to the injury of plaintiff's intestate. They saw the deceased before he was stricken, but not at a time when, or at a place where, their views of him could be serviceable or available in describing, or in description of, the means of his injury or the conduct, omission, or misconduct of the motorman which might authorize or invite a conclusion whereby the motorman's act or omission could be characterized as negligent at any stage of the occurrence eventuating in intestate's injury and death. We shall, however, later refer to the testimony of these witnesses in respect of its bearing and effect upon the testimony of the motorman, who, on this record, is the only eyewitness to the tragedy introduced. The entire testimony in the record has been considered by, and read in the consultation of, the sitting members of the court. It will serve no good purpose to state it in detail. It will suffice to state the court's conclusions therefrom and thereupon.

(1) In our views of the contest, under the issues tendered by the averments of the counts mentioned, not even a prima facie case of negligence on the part of the motorman—initial or subsequent, to his discovery of intestate's peril—was made by the evidence. In short, the plaintiff failed to carry the burden of proof assumed by him and necessary to establish, at least prima facie, his right to recover. He who charges negligence as the proximate cause of a wrong and injury suffered cannot prevail unless a definite, charged breach of duty, thus causing the injury, is shown by the evidence. The evidence, or inferences therefrom, or distinct presumptions raised thereby, must point, at least in its tendencies to the breach of duty charged; for

reliance upon conjecture or speculation, in respect of even prima facie support of the charge, cannot be justified.—*Southward v. Shea,* 131 Ala. 419, 30 South. 774; *Tinney v. Central of Ga. Ry.,* 129 Ala. 523, 30 South. 613.

(2, 3) The testimony of the motorman, if credited, clearly refuted any imputation to him of culpable negligence in act or omission antecedent to intestate's injury or coincident with any stage of its occurrence. In substance, he testified that Roberts, when in a place of safety and after having seen the approaching car within six or eight feet of a point on the track opposite that at which he was then safely standing, moved into danger in front of the approaching car and was hit thereby and killed. The testimony of the motorman to the stated effect was uncontradicted, unless the matters to be mentioned served to institute a conflict or a contradiction. One of these is said to be the evidential effect of the presence of wounds on the body which, it is asserted, were inflicted by the car instead of by the fall of the body against the street's surface or the rails of the track, and therefrom admitting the deduction that Roberts was differently postured with reference to the car from that the motorman's testimony assigned to him. There is nothing in the evidence wherefrom it could be concluded that these wounds were inflicted by the car's impact rather than the fall to the street. It would be a pure conjecture to assert the converse of either of those theories as from the character and location of the wounds alone. This expression in *Southworth v. Shea, supra,* while written in exposition of a broader subject, aptly expresses the analogous idea in this particular connection: "Proof which goes no further than to show an injury could have occurred in an alleged way does not warrant the conclusion that it did

so occur, where from the same proof the injury can with equal probability be attributed to some other cause."

A statement or described status is not serviceable to qualify or to refute positive testimony of a fact, where it is no more than the suggestion of a possibility, which may with equal probability of truth have attributed to it an effect consistent with the positive testimony it is offered to qualify or to refute. The testimony descriptive of the character and location of the wounds on Roberts' body did not institute any degree of conflict or contradiction with the motorman's testimony.

It is further insisted that, because the witnesses Wilson and Miles locate Roberts before his injury at a place or places in the street, or moving in the street in a direction or directions which were different or divergent, though in the same general area in the streets, from that to which the motorman's testimony assigned him just before and as he was stricken, the motorman's testimony was, to that extent at least, subject to discredit, and, if discredited, to be disregarded, as the jury should have been allowed to conclude. Our opinion is that in order to have the effect contended for, the testimony of Wilson and Miles must have related more nearly than it did to the time and to the occasion with reference to which the motorman testified, immediately before and at the moment of Robert's injury. The motorman's testimony does not locate Roberts, at that time, at any greatly remote place from that described by Wilson and Miles. There is nothing to show that Roberts, moving with the ordinary gait of a pedestrian, could not have taken a course, however opposed to that he was pursuing when these witnesses last saw him, that would have brought him to the place the motorman testifies he occupied just before the injury. The testimony of Wilson and Miles (assuming

for the occasion that they are in accord in this partic-
ular connection) and that of the motorman are not
opposed unless there is introduced the assumption that
they are testifying to a time and an occasion so related
to that the motorman describes as that Roberts could
not have been where the motorman places him. The
testimony of Wilson and Miles positively forbids the
adoption of the indicated assumption. But let it be as-
sumed that the motorman's testimony on this point was
contradicted by an inference arising out of the testi-
mony of Wilson and Miles. The consequence is to leave
the relation of Roberts to the car, otherwise than that
he was hit thereby, entirely undisclosed; for neither of
these witnesses undertake to definitely describe where
he was or what he was doing as the car approached or
as it reached him. In such a state of fact, obviously
the plaintiff's obligation to show, at least prima facie,
a breach of duty of the motorman, is not, in any de-
gree, discharged. In such circumstances it could not
be concluded that the motorman saw Roberts in peril,
or about to become imperiled, as that, after discovery
of his danger, any preservative effort whatsoever would
have availed to avert Roberts' injury. Even if it be as-
sumed that Roberts was on or dangerously near the
east track as the car approached that point, or mani-
fested by his conduct the likelihood that he was uncon-
sciously going into a place of danger ahead of the car,
there is an entire absence of evidence wherefrom it
could be concluded that the motorman was advised of
his actual peril or his probably impending peril at such
a time in advance of Roberts' injury as that the exer-
cise by the motorman of proper care, skill and diligence
would have served to avert his injury. The doctrine of
the *Schneider and Anniston Electric & Gas Co. v. Rosen
Cases,* reported in 146 Ala. 344, 40 South. 798,

and 159 Ala. 195, 203, 48 South. 798, 133 Am. St. Rep. 32, respectively, is, to summarily state it, that a motorman may rely upon the presumption that an adult pedestrian or traveler in a public thoroughfare will not subject himself to danger from an approaching street car, or will leave the zone of danger created by its operation, until due prudence, suggested by the circumstances open to his observation, forbids further reliance thereupon. The evidence, aside from that of the motorman, has in it no element tending, in any degree, to show at what distance ahead of the car the most prudent man would or could have discovered his peril, or that he was about to become imperiled.

(4, 5) While testimony, not positively opposed, may have its credibility reflected upon, and, upon occasion, be contradicted by, circumstances or by the obvious, intrinsic improbability of its truth (see note to *Robertson v. Dodge,* 81 Am. Dec. p. 268 et seq.; 40 Cyc. pp. 2584, 2585; among others readily accessible,) it cannot be soundly said of the motorman's testimony that its credibility was reflected upon, or that it was contradicted in any degree by, the obvious, intrinsic improbability of its truth. The ordinary presumption that a normal adult would not, in the absence of evidence to the contrary, deliberately bring about his own destruction, will not avail to institute a conflict with positive testimony of the character this motorman gave; for Roberts' act would not, under the presumption, be attributable to a purpose on his part to suicide, but rather to his own want of care in taking the chance of crossing the track and of clearing the sweep of the moving car, or of mistaking, in the circumstances of parallel tracks and of his location with reference thereto and of erring, as to which of the tracks the car causing his injury was running over. So the case is one

where evidence, entirely exculpatory, is unreflected upon and uncontradicted in any degree. Consistent with the rule long since established in this state, no question is, under such circumstances, made for submission to the jury, even though such exculpatory testimony is given by an employee of the defendant, whose wrong is charged to have rendered the defendant liable.—*Anderson v. B'ham Min. R. R. Co.*, 109 Ala. 128, 19 South. 519, citing earlier cases. This rule was given application in cases where the statute imposed the burden upon the railroad company, under certain circumstances, to acquit itself of negligence in the killing of stock. The necessary basis for the rule is that a jury cannot captiously disregard unreflected upon, uncontradicted, positive testimony, notwithstanding the jury's right is, generally, to determine the credibility to be accorded the witnesses examined before it.

But an ever broader view of the case made by the record must lead to a like result. If the testimony of the motorman was disregarded, the consequence would be to leave Roberts' death without any explanation that could render the defendant liable as for any breach of duty by its servant, the motorman; the obligation to show a breach of duty being upon the plaintiff.

(6) Perhaps it should be added, in order to avoid the possibility of misapprehension, that the testimony of the motorman, unreflected upon and uncontradicted as it is, also makes a clear case of contributory negligence on Roberts' part, forbidding any right of recovery for his death. And, in further precaution, it should be also stated that the speed of the car, whether great or not, was not of the legal order of causation proximately resulting in Robert's death. The uncontradicted evidence of the motorman necessarily so concludes.

The defendant was due the general affirmative charge requested for and refused to it.

The judgment is reversed, and the cause is remanded. Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.