(76 South. 7)

### LOUISVILLE & N. R. CO. v. MORAN.
### (8 Div. 863.)

(Supreme Court of Alabama. May 31, 1917.)

1. RAILROADS ☞344(1)—INJURIES AT CROSS-ING—PLEADING.

In an action against a railroad for death on a crossing, it was necessary, in a count restrictively describing the conditions under which the alleged negligence of defendant's agents proximately caused the death, that any possible implication that deceased was at the time a trespasser on defendant's track should be excluded by appropriate averments.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1107.]

2. RAILROADS ☞346(1)—INJURIES AT CROSS-ING—BURDEN OF PROOF—STATUTE.

By Code 1907, § 5476, a railroad has the burden to acquit itself of negligence in killing a person on a crossing with its train while he was crossing the railway.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1117.]

3. RAILROADS ☞274(5) — WARNING WHEN LEAVING STATION—DUTY OF ENGINEER—STATUTE.

The duty of an engineer with respect to warning when leaving a station whereat a stop has been made is fixed by Code 1907, § 5473, requiring him to blow the whistle or ring the bell immediately before or at the time of leaving the station or stopping place.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 872.]

4. EVIDENCE ☞594—POSITIVE TESTIMONY OF FACT—REBUTTAL BY POSSIBILITIES.

The mere possibility that a result might have been wrought in a certain way or by certain means cannot serve to contradict or reflect on the credibility of positive testimony of facts, not opinions, otherwise not impeached or rendered of doubtful verity.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2431.]

5. RAILROADS ☞348(2)—INJURIES AT CROSS-ING—SUFFICIENCY OF EVIDENCE.

In an action against a railroad for a death at a crossing, evidence held insufficient to support finding that the proximate cause of decedent's death was the negligence charged in an amended count for which the road was responsible, so that the court erred in refusing defendant the general affirmative charge.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1139.]

Gardner and Thomas, JJ., dissenting.

Appeal from Law and Equity Court, Morgan County; Thomas W. Wert, Judge.

Suit by Nina L. Moran, administratrix, etc., against the Louisville & Nashville Railroad Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Eyster & Eyster, of Albany, for appellant. Callahan & Harris, of Decatur, for appellee.

McCLELLAN, J. This is the second appeal of this case. L. & N. R. R. Co. v. Moran, 190 Ala. 108, 66 South. 799. An ample statement of the facts and circumstances related to the death of plaintiff's (appellee's) intestate, W. J. Moran, is made in the opinion delivered on that appeal. There is no occasion or necessity to reproduce in detail much of these facts and circumstances to be found fully set forth in the former opinion. Moran's death was undoubtedly caused by his contact with some part of one or more of the coaches constituting the north-bound local train of the defendant, operated on November 27, 1911, between Birmingham and Decatur. On the former appeal it was expressly ruled, after most thorough consideration, that the trial court was in error in declining to give to the jury, at defendant's request, the general affirmative charge in defendant's favor as to count 4, in which the plaintiff relied upon a liability predicated of subsequent negligence on the part of defendant's employés operating that train. After all the evidence had been presented to the jury on the trial to review the judgment in which this appeal is prosecuted, the court, instructing the jury in writing, said to the jury, we presume at the instance of plaintiff, "Count 4 is excluded from your consideration," thus removing the count upon which this court on former appeal revised the judgment because of the error committed in refusing to the defendant the general affirmative charge. This elimination of count 4 left for possible submission to the jury only the issues tendered by the averments of count 1 as amended and the traverse thereof and the issues arising upon the averments contained in many pleas of contributory negligence.

Count 1, as originally filed, was as follows:

"(1) Plaintiff claims of the defendant the sum of $30,000 as damages for that, on, to wit, the 27th day of November, 1911, the defendant was a corporation owning or maintaining railroad tracks in New Decatur, Ala., over and along which it propelled trains of cars by means of steam. On said date in the nighttime plaintiff's intestate, W. J. Moran, was lawfully crossing defendant's said railroad track in New Decatur, Ala., and while crossing said track a train belonging to the defendant and operated by agents or servants of the defendant ran against and over plaintiff's intestate, crushing and mangling him, from which he then and there died. Plaintiff avers that the agents or servants of the defendant in charge of its said train so negligently managed or operated said train as to cause it, as an approximate consequence of such negligence, to, as aforesaid, run over and kill plaintiff's intestate, to her damage as aforesaid."

This count was amended by paper filed September 14, 1912, in this form and to this effect:

"Comes the plaintiff and before demurrer ruled on amends counts 1 and 2 by averring: The said place where the defendant was killed was a public crossing at or near the defendant's passenger depot in New Decatur, Ala., and the public character of said crossing was known to the agents or servants in charge of said train."

While the amended count does not so affirm, it was doubtless the pleader's purpose to introduce the amendment at the end of original count 1.

It is entirely clear that by positive, material allegations in count 1, original and as-

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

amended, the plaintiff restrictively described the conditions under which the alleged negligence of the defendant's agents or servants proximately caused Moran's injury and death. These conditions were described in these material averments:

"* * * Plaintiff's intestate, W. J. Moran, was lawfully crossing defendant's said railroad track in New Decatur, Ala., and while crossing said track a train belonging to the defendant and operated by agents and servants of the defendant, ran against and over" Moran, causing his death.

[1] It was necessary in a count of this type that any possible implication that Moran was at the time a trespasser upon defendant's track should be excluded by averments appropriate to the purpose. Gadsden Ry. Co. v. Julian, 133 Ala. 371, 32 South. 135, and C. of Ga. Ry. Co. v. Blackmon, 169 Ala. 304, 309, 53 South. 805, among others. The effect of the averments of amended count 1 was to charge simple negligence to the injury of one exercising the right to cross the defendant's railroad in New Decatur, and that while exercising this right a train of cars was negligently run against him, proximately causing his injury, thereby confining the negligence charged to some character of omission or misconduct in causing or permitting the train to collide with him, who was there in the exercise of the right stated. On this appeal the propriety (in one aspect) of the trial court's action in refusing the general charge for the defendant depends upon whether there was at the conclusion of the whole evidence any evidence or reasonable inference from evidence tending to show negligence on the part of defendant's servants proximately causing the injury of Moran in the particular circumstances charged in amended count 1, quoted above. There is no evidence that he was injured in consequence of a want of due care after discovery of his peril. The fullest possible consideration of this entire record and of the argument submitted by the respective counsel has been given by the members of the court. The proposition on which the former reversal was put was eliminated. The inquiry is now addressed to a different status of allegation, and of evidence as applicable thereto.

[2] The ultimate question stated and to be decided has two phases: One the inquiry, whether the defendant discharged its (admitted under Code, § 5476) burden to acquit itself of the negligence charged as stated, a concession necessarily predicated of the assumption that a train of the defendant killed Moran while he was crossing the railway (Knight v. Railroad Co., 190 Ala. 140, 67 South. 238); and the other, upon the hypothesis that the defendant discharged the stated burden, whether there was any evidence of negligence on the part of the defendant's servants in charge of this train to which, for proximate cause, Moran's injury could be ascribed, within the case stated in amended count 1.

There is no evidence whatever that any one concerned in the operation of this train saw Moran before, on this occasion, or at the time of his injury. The fact (if so) that Allen, the engineer, saw a man with a raised umbrella walking near the station building, on the east of the track, as his train was moving away from the station, was without any possible bearing or effect; there being no evidence tending in any degree to show that the man he saw was Moran or that the man he saw was imperiled or about to become so. Regarding every possible contradiction or conflict in the evidence in the process of attaining the conclusion to be now stated, it can be affirmed as upon the undisputed evidence that Moran was not struck by the engine when the train was coming into the New Decatur station nor before it stopped for that station. If Moran was hit or harmed by collision with any part of the train while he was crossing the track before it stopped at the station, his contact with it can only be ascribed to his own act; for the evidence does not even remotely suggest anything done or omitted by the trainmen that would or could have caused his contact with the train before it stopped for the station, or that any of them knew or had any reason to know that he was about to come in contact with the train before it stopped for the station.

The plaintiff's case comes to this, and only this, as the only possible contention of fact on which to predicate an argument that Moran's injury might be ascribed to negligence on the part of defendant's employés, within the averments of amended count 1, viz.: That Moran was on the track in front of the stationary engine at the time it began to move away from the station, and that there was a breach of duty by the engineman or enginemen in putting the then stationary engine in motion or in permitting it to move without either allowing sufficient time between the ringing of the bell and the starting of the engine to permit one so situated to remove himself from danger, or looking to see whether any one was so situated before starting the train.

[3] In this state the duty of an engineer with respect to warning when leaving a station whereat a stop has been made is fixed and governed by this provision of Code, § 5473:

"He must also blow the whistle or ring the bell *immediately* before, and at the time of leaving such station or stopping place." (Italics supplied).

The evidence is without dispute that the engineer rang the bell immediately before starting his engine. He testified:

"The first thing I did when I got the signal to start was to turn the air bell ringer on, then I pulled the throttle open, after the bell started to ringing. The throttle is on the boiler there in front of me. When I opened the throttle the engine started off, and after I started off, I just glanced around through the gangway. When the engine started, I straightened up.

I kept my seat all the time (witness leaned over and indicated how he had to move to start the bell ringer and to open the throttle). I don't know Harry Cline except when I saw him here on the witness stand."

The statute, as appears, does not require the lapsing of any period of time between the ringing of the bell and the starting of the engine or that the bell shall ring any particular space of time before the engine is moved. The statute's command was obeyed by Allen when, according to the undisputed testimony, he put the automatic air bell ringer into operation, and thereby rang the bell and then started the engine. Certainly the observance of the statute's command in this regard precluded an imputation of negligence in the absence of particular circumstances known to the operatives on the engine. The evidence is undisputed that both Allen and the fireman did look in front of the engine before it started, and that they saw no one there; that there was no one in front of the engine.

It is insisted that the court below could not, and properly did not, accept as indisputably proven these vital matters to which the two operatives on the engine pointedly testify. It is further insisted that the fact was also uncontradictedly proven that Moran's left leg was broken at a point between the ankle and the knee, at which the cowcatcher's frame would have come in contact with his leg on the side next to the engine if he was then crossing the track in front of the engine, from the east to the west side of the track, and if the engine had been moved against him. This latter insistence could not, of course, be accepted, based as it is solely on the location of the break in the left leg, with reference to the cowcatcher's elevation, and on the presence of wounds on his body below the waist that are not traced by any fact or circumstance in the evidence to contact with the engine's parts, if the positive evidence that Moran was not in front of the engine when it moved away from the station is free from reflection or contradiction. This reflection upon its credibility or its contradiction is not afforded by any or all of the wounds on his body. It would be a pure speculation to attribute the wound on the left leg to contact with the cowcatcher. That wound's or break's undoubted existence is not at all inconsistent with the positive evidence that Moran was not where the cowcatcher could so injure him as the train left the station. It was a wound that might have been received otherwise; might have been received when Moran was beneath the trucks of the coach or coaches.

[4] A mere possibility that a result might have been wrought in a certain way or by certain means cannot serve to contradict or to reflect upon the credibility of positive testimony of facts (not opinions) that is otherwise not impeached or rendered of doubtful verity. The posture of Moran's body across the west rail after the train had gone is likewise ineffective to contradict or to reflect upon the credibilty of the positive testimony that Moran was not in front of the engine when it was moved away from the station. The testimony of Hodges that the next morning he saw marks as if something had been dragged along the ties or the track, and that he saw a discoloration that looked like blood along there, is likewise ineffectual for the purpose of instituting a conflict with such positive testimony or of casting a reflection upon its credibility. To say that either of these features of the testimony is efficient to reflect upon testimony otherwise without contradiction in any degree would be to visit upon the consideration of the evidence a method that could only be speculative. The other suggestions in brief which are thought to reflect upon the credibility of the engineer and the fireman have been carefully reviewed. These suggested contradictions, etc., are without merit; they institute no conflict; they import no reflection upon the credibility due to be accorded uncontradicted testimony. Mobile Light Co. v. Roberts, 192 Ala. 486, 68 South. 815.

Through undisputed evidence, free from adverse inference, the defendant discharged any obligation imposed upon it as the result of the provisions of Code, § 5476, under the allegations of amended count 1.

[5] There being no ground in the evidence on which the jury could rest a finding that the proximate cause of Moran's injury and death was the negligence charged in amended count 1, for which the defendant was responsible, the court erred in refusing the general affirmative charge for and requested by the defendant.

The judgment is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD, SAYRE, and SOMERVILLE, JJ., concur. GARDNER and THOMAS, JJ., dissent.