(85 South. 257)

### LAWSON v. MOBILE ELECTRIC CO.
### (1 Div. 120.)

(Supreme Court of Alabama. Feb. 12, 1920. On Rehearing, June 3, 1920.)

**1. Electricity ⬦13—Company not insurer.**

While a company distributing electric current must exercise a high degree of care, it is not an insurer.

**2. Negligence ⬦121(1)—Burden of proof on one charging negligence.**

The burden of proof is on one charging another with culpable negligence.

**3. Evidence ⬦94—Burden of proof never shifts, though the duty of going forward may.**

The burden of proof never shifts, although the duty of going forward with evidence frequently does change as a result of prima facie proof or legal presumption.

**4. Negligence ⬦136(6) — Evidence of due care may present question for court, though plaintiff relies on res ipsa loquitur.**

In absence of evidence of actual negligence, evidence of due care by the defendant will make the case one for the court, in the sense that the mere presumption involved in the res ipsa loquitur doctrine will not be given the effect of evidence, so as to raise a conflict for jury decision.

**5. Electricity ⬦19(6)—Showing of proper equipment by electric company warrants affirmative charge, notwithstanding res ipsa loquitur.**

Where employé of shipbuilding company was killed by electric shock from improperly insulated electric lighting wire supplied by his employer, and his administrator, suing an electric company, which supplied the current, relied on the res ipsa loquitur doctrine, undisputed evidence by defendant that its transformer, which reduced the current to 120 volts in the wire in question, was performing its function immediately after the accident, the voltage then being 118, left no conflict in the evidence for the jury, and the court properly gave the general affirmative charge for defendant.

**6. Trial ⬦234(3)—Verdict may be directed, if jury believed testimony consisting of opinion evidence.**

While the jury cannot be required to accept expert testimony, verdict may be directed

in case they believe the testimony, which consisted of the opinion of experts, which was uncontradicted, for, in that event, the ultimate question is left to the jury.

**7. Electricity ⬯⮞16(7)—Negligence, to be actionable, must be proximate.**

The fact that an electric company was negligent in failing to inspect its transformers and other appliances, by which a current was reduced until it was safe, will not justify recovery for the death of one killed by an electric shock, where it clearly appeared from the examination afterwards that the transformer was in working order and that an excessive current was not carried.

Appeal from Circuit Court, Mobile County; Claud A. Grayson, Judge.

Action by A. T. Lawson, as administrator of the estate of J. R. Lawson, against the Mobile Electric Company for damages for the death of his intestate. Judgment for defendant, and plaintiff appeals. Affirmed.

, Harry T. Smith & Caffey, of Mobile, for appellant.

The affirmative charge was not proper in this case. 151 Ala. 313, 44 South. 47; 166 Ala. 482, 52 South. 86; 175 Ala. 176, 57 South. 724, Ann. Cas. 1914C, 1119; 194 Ala. 175, 69 South. 601; 194 Ala. 338, 70 South. 7; 195 Ala. 152, 69 South. 964. Under the facts in this case, the doctrine of res ipsa loquitur applies. 190 Ala. 82, 66 South. 702; 171 Ala. 330, 54 South. 638, Ann. Cas. 1913A, 1181; 99 Atl. 174; 58 Atl. 1068; 31 Colo. 301, 73 Pac. 39; 41 Or. 336, 68 Pac. 810; 84 Wis. 171, 53 N. W. 850; 17 Ga. App. 625, 87 S. E. 923; 154 N. C. 131, 69 S. E. 767, 32 L. R. A. (N. S.) 848; 68 N. J. Eq. 198, 59 Atl. 349; 173 Cal. 709, 161 Pac. 269; 135 Fed. 972, 68 C. C. A. 453; 9 App. Div. 51, 41 N. Y. Supp. 78; 80 App. Div. 556, 81 N. Y. Supp. 38. The testimony of experts as to the effects of excessive current is advisory only, and will not support the giving of the affirmative charge. 144 Ala. 470, 39 South. 513; 105 U. S. 45, 26 L. Ed. 1028; 120 U. S. 73, 7 Sup. Ct. 408, 30 L. Ed. 786; 166 U. S. 110, 17 Sup. Ct. 510, 41 L. Ed. 937, and authorities cited.

Palmer Pillans and William Cowley, both of Mobile, for appellee.

There must be evidence adduced tending to show the negligence charged, or there is nothing to go to the jury. 192 Ala. 488, 68 South. 815; 200 Ala. 241, 76 South. 7. The doctrine of res ipsa loquitur does not suffice here to cause a conflict in the evidence. 125 Ala. 237, 28 South. 438, 50 L. R. A. 620; 149 Ala. 557, 42 South. 747; 186 Ala. 111, 65 South. 54.

SAYRE, J. Plaintiff's (appellant's) intestate and one Allio, a fellow servant, were working for the Alabama Dry Dock & Shipbuilding Company in the hold of a steel vessel at 6 o'clock (normal time) in the afternoon of a day in August. Their business was to repair a broken rib in the vessel, a mine sweeper, which their employer was building for the government of the United States. There was water in the hold, and intestate stood upon a plank that had been placed for the purpose. The plank was wet. In response to a request from intestate, Allio handed to him an electric lamp, which, in order that it might be moved about as occasion required, was attached to a cord about 50 feet in length. At or near the point where the cord was attached to the socket of the lamp—an ordinary incandescent lamp—the wires constituting the cord were exposed; the insulating material having been worn away or otherwise destroyed. Allio took the light by the cord; intestate took hold at the bulb, or the basket protecting it. Intestate immediately received a shock, made an unsuccessful effort to disengage his hand from the lamp, and in a few moments died. It is not disputed that intestate died as the result of an electric shock received from the light, or rather the cord supplying it with current.

Plaintiff offered evidence tending to show that his intestate was up to the moment of his death a strong, healthy negro man, and an industrious worker, about 38 years of age, and never sick, except with an occasional malarial chill; that the lighting current used at the shipbuilding company's plant was furnished by defendant, and is the same as that used for lighting in buildings in the city of Mobile; that the defendant furnishes a current of 2,300 volts, which passes through a transformer by which, when properly performing its function, it is stepped down to a current of 110 to 120 volts; that in the shipbuilding company's plant the three-wire system is used, each of the outside wires carrying 110 to 120 volts, the middle wire being neutral, carrying no current; that if you touch one of the outside wires of a three-wire system you get a current of 110 to 120 volts, but if you touch the two outside wires you get 220 to 240 volts; that defendant furnished current to the shipbuilding company through a transformer fixed on a pole in the street to a meter at the point where the current passed into the shipbuilding company's plant; that the shipbuilding company distributed the current from the meter, and furnished all inside parts, equipment, and supplies, the cord with which plaintiff's intestate came in contact being a part of the apparatus furnished by the shipbuilding company for the use of its employés; that a current of 120 or 240 volts will not kill a man under ordinary conditions, but an expert witness, called by plaintiff, testified on cross-examination to his opinion that a cur-

rent of 110 to 120 volts may prove fatal under favorable circumstances, meaning, of course, circumstances conducive to the full development of the current in the person affected thereby; that the physical condition of the man is to be considered; that the salt in perspiration and a wet plank under foot would help the passage through a man of the full current to which he is exposed, but that he could get no current in excess of that carried by the wire; that a current of 220 volts would burn out a lamp made to use 110 to 120 volts immediately. This witness further on cross-examination testified that the lamps in use at the shipbuilding plant were 110 to 120 volt lamps, and that on the vessel where intestate was working the three-wire system was not used, and that the particular wire from which intestate received his shock carried only 110 volts, but the witness commonly spoke of the voltage used in such lamps, the ordinary incandescent lamp, as 110 to 120.

Evidence for the defendant went to show that the current being generated at its power house and passing along its primary wire to the transformer at the shipbuilding plant at the moment of intestate's injury, and uniformly throughout the day, carried a voltage in the near neighborhood of 2,300, as shown by a mechanical device which operated constantly, uniformly, and accurately; that the transformer was constructed to step the current down to a voltage of one-twentieth of the high-tensions current on the primary line; that the transformer had not been inspected prior to intestate's injury, but that any defect therein necessarily persists until a remedy is applied, and that, without any change in conditions, the current from the transformer to the shipbuilding company's meter was measured within an hour after the accident and showed a voltage of 118; that the lights in the plant were burning at the time of the test; and that no high-tension wires were crossed on the wire supplying current to the plant. This evidence for the defendant was uncontradicted, save by the inference which the plaintiff would draw from the fact that his intestate died as the result of an electric shock produced by the current generated by defendant and distributed over its wires. One of the expert witnesses testified that negroes were commonly supposed to be more sensitive to electric shock than whites; that is, negroes are better conductors of electricity, and for that reason more subject to harm from a current of given voltage.

This statement of the evidence will suffice for the purposes of the appeal. The trial court, upon defendant's request in writing, charged the jury as follows:

"The court charges the jury that, if they believe all the evidence in this case, they ought to find a verdict for defendant"

—and that action of the court is assigned for error.

[1-5] That count of the complaint which alone needs consideration at this time (count 1) alleged that plaintiff's intestate—

"was killed by reason of negligence on the part of the defendant [the Mobile Electric Company], or one of its servants or employés, in negligently charging, with a deadly current of electricity, a wire which was in such a position that the employés of the Alabama Dry Dock & Shipbuilding Company were liable to come in contact therewith."

While defendant was required to exercise a very high degree of care in and about the generation and distribution of its current, it is not claimed that it was an insurer; nor is the operation of the general rule of law, that the party who charges another with culpable negligence must prove it, denied in the premises. In its most general aspect the argument for a reversal proceeds upon the proposition that the fact that plaintiff's intestate was killed by an electric current furnished by defendant was of itself evidence that the current so furnished was excessive and dangerous to human life. But in no case can negligence be assumed from the mere fact of an injury; always the burden of proving the negligence alleged rests upon the plaintiff. However, the foregoing statement, undeniably true though it is, takes no account of the doctrine of res ipsa loquitur, and upon that doctrine, or the doctrine expressed by that maxim, appellant relies, contending that, in the presence of that doctrine the general charge with hypothesis was error.

Appellant lays much store by the opinion in Turner v. Southern Power Co., 154 N. C. 131, 69 S. E. 767, 32 L. R. A. (N. S.) 848, in which Shearman & Redfield on Negligence, § 59, is quoted as follows:

"In many cases the maxim 'res ipsa loquitur' applies—the affair speaks for itself. It is not that in any case negligence can be assumed from the mere fact of an accident and an injury, but in these cases the surrounding circumstances which are necessarily brought into view by showing how the accident occurred contain without further proof sufficient evidence of the defendant's duty and of his neglect to perform it. The fact of the casualty and the attendant circumstances may themselves furnish all the proof that the injured person is able to offer or that it is necessary to offer."

Upon this text, substantially, the cases upon which appellant relies are founded. We do not take issue with the quoted text; we observe only that, in view of modern texts and our own cases, some further statement as to the rationale of its doctrine is desirable, and that where, as here, evidence in denial of the negligence charged has been introduced, an additional element needs to be

considered in determining the propriety of its application. In cases of this character we find frequent quotation of the following statement of the law from an English report, disclosing consideration of the additional element to which we have referred and a more adequate statement of the doctrine:

'"Where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care." Scott v. London Dock Co., 3 H. & C. 596, a case in which a passer-by was injured by the falling of goods from a crane.

Similar language was quoted by Stone, C. J., in Georgia Pacific Rwy. Co. v. Love, 91 Ala. 432, 8 South. 714, 24 Am. St. Rep. 927, a case of injury to a passenger on a railroad. And the same statement of the doctrine is quoted in the text of the latest edition of Shearman & Redfield, volume 1 (6th Ed.) §§ 58b and 59, where also (section 59) is reproduced this language from Bridges v. North London R. R. Co., L. R. Q. B. 377, 391:

"Where it is shown that the accident is such that its real cause may be negligence of the defendant, and that, whether it is so or not, is within the knowledge of the defendant, the plaintiff may give the required evidence of negligence, without himself explaining the real cause of the accident, by proving the circumstances, and thus raising a presumption that, if the defendant does not choose to give the explanation, the real cause was negligence on the part of the defendant."

So much of the common language of the foregoing authorities as predicates the maxim in part upon the absence of explanation by the defendant leads to the question raised in the present case, viz. whether, in the presence of explanation by the defendant, the legal presumption expressed by the maxim persists as evidence in the cause. There are, of course, many accidents from which no presumption of negligence can arise (Byrne v. Boadle, 2 H. & C. 721), and Wigmore speaks of the maxim in question as symbolizing the argument for a presumption of culpability on the part of the owner or manager of powerful machinery, harmless in normal operation, but capable of serious human injury, if not constructed or managed in a specific mode. Also, very justly, as we think, he indicates the nature and effect of the rule connoted by the maxim when he says:

"It may be added that the particular force and justice of the presumption, regarded as a rule throwing upon the party charged the duty of producing evidence, consists with the circumstance that the chief evidence of the true cause, whether culpable or innocent, is practically accessible to him but inaccessible to the injured person."

204 ALA.—21

In a leading New York case it was said that—

"Where unimpeached witnesses testify distinctly and positively to a fact, and are uncontradicted, their testimony should be credited and have the effect of overcoming a mere presumption." Elwood v. W. U. Tel. Co., 45 N. Y. 553, 6 Am. Rep. 140.

Referring to the case just quoted, it is observed in the text of Moore on Facts that—

"By 'mere presumption' the court probably meant to designate those presumptions which are employed only to locate the burden of proof and which have no intrinsic value. Thus, the quotation from the New York case just cited was used in three cases [Murray v. Pawtucket Valley St. R. R. Co., 25 R. I. 209; Gorman v. Hand Brewing Co. (R. I.) 66 Atl. Rep. 209; Robinson v. N. Y. Cent. R. R. Co., 9 Fed. 877], where the courts were speaking of the maxim 'res ipsa loquitur' in actions against common carriers of passengers, and pointing out' that the presumption connoted by the maxim would be overcome by uncontradicted credible testimony to proper care on the part of the defendant." 1 Moore on Facts, § 98.

Nevertheless, as the text points out, in the case of Gorman v. Hand Brewing Co., 28 R. I. 180, 66 Atl. 209, the uncontradicted testimony was held not to be controlling on the jury because it involved inherent improbability; and so in Robinson v. N. Y. Cent. R. R. Co. (C. C.) 9 Fed. 877, because the witnesses for the defendant were tempted to acquit themselves of a criminal fault.

If Prof. Wigmore's statement of the rationale of the doctrine of res ipsa loquitur be sound, and we think it is, the result is to raise a rebuttable presumption of law, in the phrase of the New York case, supra, a "mere presumption" having no intrinsic value (Moore, supra), a presumption of which Chamberlayne in his treatise on the Modern Law of Evidence speaks as a presumption of administrative procedure which assumes, not the truth of an inference, but the existence of a fact (volume 2, §§ 1082–1085)—assumed, not because it necessarily follows upon facts in evidence, but because the chief evidence of the true cause of the injury charged is practically accessible to the party charged but inaccessible to the party injured. He says that—

"When evidence is introduced on the point covered by the presumption of law, it is now functus officio so far as sustaining the burden of evidence is concerned. It drops out of sight." Chamb., ubi supra.

And further:

"The presumption of law, as a rule of substantive law, is equally binding upon the jury. It constitutes in the substantive law what may be deemed a prima facie right. The jury can no more neglect it than they could fail to give effect to any other rule of law. When, however, the conflicting evidence upon which the

jury might reasonably act has been admitted" —meaning, we take it, evidence conflicting in itself, and not mere evidence in conflict with the presumption—"the entire question of weight becomes a question for the jury. The presumption of law has disappeared, as such. The judge is no longer entitled to rule that the inference of fact upon which it is based has a prima facie value. To do so, would be to comment upon the weight of conflicting evidence which is, in a majority of American jurisdictions, expressly forbidden." Chamb., ubi supra.

There are cases holding the presumption expressed by the maxim to have weight as evidence, but the best-considered authorities hold, we think, that it serves in the place of evidence only until evidence to the contrary has been adduced; that when evidence to the contrary has been adduced the maxim has spent its force and served its purpose. Note to State v. Kelly, Ann. Cas. 1913E, 974.

The cases cited in the brief for appellant, plaintiff, to the precise point here under discussion, are from other jurisdictions. Some of them support the contention to which they are cited; but considered in connection with the fact that the weight of the undisputed evidence for defendant in the present case was submitted to the jury by the instruction assigned for error, quite a number of the plaintiff's cases will be found upon analysis to be not inconsistent with our conclusion that the instruction was proper. That conclusion finds ample support in the decisions of this court. Thus in Louisville & Nashville R. R. Co. v. Marbury Lumber Co., 132 Ala. 520, 32 South. 745, 90 Am. St. Rep. 917, a case in which the action was against the railroad company to recover damages resulting from fire alleged to have been caused by the negligent escape of sparks from a passing locomotive, previous cases were summarized to this effect: That the burden was on the plaintiff to show that the fire was caused by sparks from defendant's locomotive, after which the burden devolved upon defendant to show that its engine was properly constructed with approved appliances to prevent the escape of sparks, was in good repair and prudently managed; and upon proof of these facts by the defendant, the presumption arising from the mere communication of fire from the engine was rebutted, and plaintiff could not recover without making proof of other specific acts of negligence on defendant's part, citing L. & N. R. R. Co. v. Reese, 85 Ala. 497, 5 South. 283, 7 Am. St. Rep. 66; L. & N. R. R. Co. v. Marbury Lumber Co., 125 Ala. 237, 28 South. 438, 50 L. R. A. 620. These cases were shortly followed by Farley v. M. & O. R. R. Co., 149 Ala. 557, 42 South. 747.

The language used in the foregoing cases, it may be, does not accurately observe the rule that the burden of proof never shifts, though the duty of going forward with the evidence frequently does shift as a result of

prima facie proof or legal presumption (Starks v. Comer, 190 Ala. 253, 67 South. 440), but the prior decision in the Marbury Lumber Company Case very clearly places the duty of the railroad company to furnish evidence as to the equipment and management of its engine, in the circumstances stated, on the ground that the evidence in such case is accessible to it and not accessible to the injured party suing. The decision in that case contains a valuable discussion of the point here in question, and, in addition to fire cases, points out that the same rule had been followed in cases involving the killing of stock on the track, where the burden of proof is cast by statute upon the railroad company. The foregoing cases state very clearly the doctrine that, in the absence of evidence of actual negligence, evidence of due care by the defendant will make the case one for the court, in the sense that the mere presumption will not be given the effect of evidence so as to raise a conflict for jury decision; in other words, that a mere rebuttable presumption of law is not evidence, and the same principle has been very recently reiterated and followed by this court in Liverett v. N. C. & St. L. R. R. Co., 186 Ala. 111, 65 South. 54; Mobile Elec. Co. v. Roberts, 192 Ala. 486, 68 South. 815; L. & N. R. R. Co. v. Moran, 200 Ala. 241, 76 South. 7; Cent. of Ga. R. R. Co. v. Robertson, 83 South. 102 [1]—all cases involving human life or safety. See, also, Mathews v. Ala. Gt. So. R. R. Co., 200 Ala. 251, 76 South. 17.

[6] The brief for appellant points out that the testimony which went to show that the voltage of the current being furnished by defendant to the Shipbuilding Company's plant at the time of plaintiff's intestate's injury was not in excess of 110 to 120, and that for house lights a current of that voltage was usual and necessary, thus, if accepted by the jury, excluding the conclusion that defendant had been guilty of negligence, and leaving the solution of the question at issue to rest upon the proposition that intestate's death resulted from a disposition of circumstances (for which defendant was in no wise responsible) which operated to give an ordinary incandescent lighting current its utmost harmful effect upon plaintiff's intestate in conjunction, probably, with a peculiar susceptibility on his part to harm from an electric shock—that this testimony was furnished by experts, and hence that the jury was not bound to accept it. Andrews v. Frierson, 144 Ala. 470, 39 South. 512, is cited. That was a case in which the report of a register in chancery was under review. In Robinson v. Crotwell, 175 Ala. 194, 57 South. 23, a jury case, we said that a jury cannot be required, as matter of law, to accept the conclusions of expert witnesses. A number of cases are cited by Judge Anderson in his

---

[1] 203 Ala. 358.

concluding opinion in Harris v. N. C. & St. L. R. R. Co., 153 Ala. 156, 44 South. 962, 14 L. R. A. (N. S.) 261 (a case in which a child 19 months of age was killed by a locomotive on defendant's track), as upholding the practice of giving the general charge with hypothesis in cases of undisputed expert testimony to scientific facts. Such was the case here, and the ultimate decision was left with the jury by virtue of the hypothesis that they believed all the evidence.

[7] It is said in appellant's brief that the undisputed evidence showed that defendant maintained no system for inspecting its transformers, and that this was proof of actual negligence. Conceded; but the evidence also showed without dispute that the transformer was performing its appropriate function at the time of plaintiff's intestate's injury, so that the failure to inspect, so far as this particular case is concerned, was of no consequence.

We hold, therefore, that the trial court committed no error in giving the general charge with hypothesis.

Affirmed.

All the Justices concur. McCLELLAN and BROWN, JJ., concur in the conclusion only.

On Rehearing.

PER CURIAM. Application overruled. All the Justices concur.

McCLELLAN, J. (concurring). I concur in the affirmance of this judgment upon the ground, presented by the giving of the general affirmative charge (with hypothesis) for the defendant, that the wrong or negligence charged in the complaint was not shown to be the proximate cause of the injury and death of the intestate.

In the brief in support of the application for rehearing it is insisted that there is a conflict between the pertinent doctrine of Harris v. N., C. & St. L. Ry., 153 Ala. 156, 44 South. 962, 14 L. R. A. (N. S.) 261, touching the conclusiveness of the undisputed testimony of expert witnesses, and the pronouncement made on that subject in Robinson v. Crotwell, 175 Ala. 194, 205, 57 South. 23. In the Harris Case it was expressly held that, where the subject of expert testimony is one on which the jury cannot be presumed to have any opinion of their own, and such evidence is undisputed, "the defendant is entitled to a verdict"; whereas, in Robinson v. Crotwell it is expressly held that under such

circumstances the opinions of expert witnesses are not binding upon the jury, that the jury are entitled "to base their verdict upon their own judgment of the facts," citing the apt authorities afforded by McAllister's Case, 17 Ala. 434, 52 Am. Dec. 180, and Andrews v. Frierson, 144 Ala. 470, 39 South. 512. Had the view taken and pronounced in Robinson v. Crotwell been expressed in the Harris Case, there would have been no difference of opinion in that case. That was, in fact, the basis for the dissenting view of Tyson, C. J., and the writer in the Harris Case.

It results, therefore, that the doctrine declared in Robinson v. Crotwell and repeated in the opinion on present appeal supersedes the pertinent pronouncement, to a different effect, in Harris v. N., C. & St. L. Ry. The idea that the hypothesis to the general affirmative charge given for a party litigant still leaves the jury to determine the matter as an issue of fact is a distinct departure from the view, always prevailing in this court, that the giving of the general affirmative charge, with hypothesis, is a declaration of law by the court, just as its action in sustaining a demurrer to the evidence is a pronouncement of law by the court. Tabler v. Sheffield Land Co., 87 Ala. 305, 309, 6 South. 196; Weil v. State, 52 Ala. 22; Bridges v. Tenn. Co., 109 Ala. 294, 19 South. 495, among many others. It is settled here that a verdict opposed to instructions given by the court is erroneous, and for that reason a new trial should be awarded. Fleming v. L. & N. R. R. Co., 148 Ala. 527, 41 South. 683; Wolf v. Delage, 150 Ala. 445, 46 South. 856.

Expert testimony is admitted for the sole purpose of enlightening the jury and aiding it in arriving at a correct conclusion in the premises, but not, though unimpeached, to control its judgment. See authorities cited on pages 149, 150, of 153 Ala., on pages 965, 966, of 44 South., and also Robinson v. Crotwell, supra. If, however, the doctrine of the opinion on present appeal and of Robinson v. Crotwell is accepted as still leaving to the jury the determination of the issue involved, it is evident that in such cases the party against whom the affirmative charge, with hypothesis, is given should be accorded an explanatory request that, though the affirmative charge, with hypothesis, has been given his adversary, still the jury is entitled to pass upon the evidence and to accord it such credit as their judgments approve.

BROWN, J., concurs in the foregoing.