(133 So. 287)

**LANGLEY BUS CO. v. MESSER.**

**5 Div. 67.**

Supreme Court of Alabama.

March 26, 1931.

534

Grady Reynolds and Omar L. Reynolds, both of Clanton, for appellee.

Rushton, Crenshaw & Rushton, of Montgomery and Lawrence F. Gerald of Clanton, for appellant.

## BROWN, J.

This is an action on the case brought by the appellee against the appellant to recover damages for personal injuries, inflicted in consequence of the automobile in which she was riding being run into from the rear by the defendant's passenger bus operated between Montgomery and Birmingham over the Montgomery-Birmingham highway.

The complaint as originally filed consisted of a single count, designated as count 1, and on the day of the trial two counts were added by amendment, the counts so added being designated as counts A and B. The defendant pleaded the general issue, not guilty, and contributory negligence "in short by consent." Counts 1 and A ascribed the plaintiff's injury to the negligence of the defendant's agent or servant in the operation of the bus, and count B to the wanton conduct of defendant's agent or servant.

After the close of the evidence and the argument of the case, counts 1 and B were stricken from the complaint on plaintiff's motion, and the case went to the jury on count A, and defendant's pleas of not guilty and contributory negligence, resulting in a verdict and judgment for the plaintiff, from which the defendant has appealed.

■■ The appellant's major contention is that the court erred in refusing the affirmative charge, which it requested in writing, and in denying its motion for new trial on the ground that the verdict was contrary to the great weight of the evidence. The contention, to state it in the language of appellant's brief, is: "Unless there was some testimony offered on behalf of the defendant or offered by the plaintiff in rebuttal, there was no testimony whatsoever that the defendant, or its agent, servant or employee, was negligent on the occasion complained of. It has many times been considered and decided that the mere happening of an accident does not give rise to a presumption" of negligence.

The rule applicable is, when the plaintiff adduced evidence showing the fact of the casualty, and the attendant circumstances, that it was caused by the defendant's bus operated and in charge of the defendant's agent or servant, and is such as, in the ordinary course of things, does not happen, without negligence, this was sufficient, prima facie, to shift to the defendant the burden of going forward with the evidence—res ipsa loquitur.

■■ The defendant may rebut the inference of negligence arising from plaintiff's evidence by showing that the bus was properly equipped with approved devices and appliances to enable the operator to discover obstructions in its path at such distance that a collision therewith could be averted, and with braking appliances to check its speed or stop it, if needs be, and that it was properly managed and controlled—facts peculiarly within the knowledge of the defendant—and, unless the evidence in this respect is undisputed and free from adverse inferences, the question of negligence is one of fact for the jury. Code of 1923, §§ 6264, 6266; Lawson v. Mobile Electric Co., 204 Ala. 318, 85 So. 257; Louisville & Nashville Railroad Co. v. Marbury Lumber Co., 125 Ala. 237, 28 So. 438, 50 L. R. A. 620; Tombigbee Valley R. R. Co. v. Howard, 185 Ala. 612, 64 So. 338; Ford v. Hankins, 209 Ala. 202, 96 So. 349; Hughes v. A. C. & S. R. R. Co., 85 N. J. Law, 212, 89 A. 769, L. R. A. 1916A, 927, and note 930.

If, however, the evidence in rebuttal of the inference of negligence, in case such as this, arising from proof of the casualty and the attending circumstances, is without dispute and free from adverse inferences, the plaintiff, in order to recover, must offer other evidence of negligence, and, in the absence of such, the question is one of law for the court. Lawson v. Mobile Electric Co., supra.

■ The evidence adduced by plaintiff tends to show that the Ford car in which the plaintiff was riding, as a guest of her brother, was moving north on the right side of the highway about 9 o'clock at night, equipped with head and tail lights, and immediately before the collision it passed the south-bound bus moving along the opposite side of the highway, and immediately thereafter the glare of the lights of the north-bound bus was observed by the plaintiff as they flashed on the Ford, and immediately thereafter the north-bound bus collided with the Ford and knocked it off the highway, some thirty feet into the ditch, crushing the hind wheel and turning it over on its back. The plaintiff was thrown from the Ford and rendered unconscious.

The witness Stockman, the driver of the north-bound bus, testified: "It was night, about 8:30. I was really due there (Verbena) at 8:15, and was about fifteen minutes late, and I had checked up to pass the other bus, and on top, where this Ford was parked—it is kinder of a little incline, you can see

fairly well—a little hill leading up on top; and I checked my speed down to, well, I will say 25 or 28 miles an hour. And I thought everything was clear, at least I didn't see a thing in the world in front of me, so I began to step on the accelerator; but didn't gain much headway, on account of the incline. When I got up on the incline, just like a flash I saw this Ford—didn't see any light—and just as quick, though, as I could, I cut to my left. And, I don't know, I had straightened up before I cut to my left, and the front fender and hub-cap on the right front wheel struck the rear of this Ford on the left hand side. Well I heard the crash; the rear end didn't touch it, and I made a deep swerve like that (indicating). I was headed across the road and cut back quick to my right, trying to straighten up, but I never did straighten up, it was all done so quick. We went out through the corn field—just missed a telephone post a little bit—and after I got the bus stopped I opened the door as quick as I could and ran back to this Ford and asked who was hurt. * * * It was just a flash; I was right absolutely on them—I just didn't see nothing—I absolutely didn't see anything in front of me—didn't see any light, and the tail light was absolutely not burning. No tail light at all. I examined it, and there was no tail light burning. I can't say whether the Ford was moving or stopped about the time I saw it—I can't say that to save my life, because it was done so quick at the time. It was done so quick that I missed it, and only hit it with my front right fender and right front hub-cap. And after I asked what in the world was he doing on the highway parked here—I don't know whether he was parked or not, but they had no lights. He said, well they had started to Coopers. Miss Messer (the plaintiff) said they had started to Coopers to meet the other bus, and they saw they couldn't make it to Coopers and were backing up on the highway until they got into this little outlet road, when he meant to turn around and go back to Verbena and meet the bus. They are the very words she told me. I couldn't state whether the car was moving or not. It all happened so quick. I absolutely could not say. * * * I wasn't going over 28 miles an hour. I had cut out my inside lights, but there was a very clear view in front."

On cross-examination this witness further testified, among other things: "I had pretty good lights. We don't dim them only once in a while. I didn't dim them that night. I couldn't tell you right off hand how far I was away from that car when I first saw it. All I know is, I knew something had to be done, so I made a lunge to the left hand side to get by. I was going around 25 to 28 miles an hour, and this happened over the top of the little slight incline. * * * My ordinary speed running along the highway is from 40 to 45. That is the speed it takes to make that schedule. I run around 35 to 40 all the time; don't necessarily run 45 unless you are running late."

The witness Kimbrough, a passenger, testified in part: "It was something like twenty or twenty-five yards from the time we passed this bus until the time we hit the Ford, because we had just passed the bus, and I had raised up when I looked and saw this Ford right out in front of us like that, and I grabbed the seat. All four wheels of the Ford were on the pavement, the best I remember. The Ford was either parked or backing up. * * * I think I am familiar with the speed of cars. I would say we were going approximately thirty miles an hour, just a rough estimate. I don't think it could have been going 45 miles an hour at the time it hit this car, or at the time I first saw the Ford car. If there was any lessening of the speed of the bus from the time I first saw the Ford to the time we hit it, I didn't know it. The first thing I knew that the driver did was when he turned to the left. We were traveling on the right hand side—on the east side of the yellow line,—and he hit the Ford car on that same side. The Ford car was on the same side, headed in the same direction, and he hit the left rear part of the Ford car. I would say he was five or six yards, maybe, behind the Ford car before he began to turn to the left—about fifteen or eighteen feet."

The witness Hillery, another passenger on the bus, testified: "I was sitting right behind the driver on the right. We had just passed Verbena. I saw this Ford car just the least bit before the accident. We were about eight or ten feet from it, I imagine, before I saw it. I didn't see a light on the rear burning. * * * The bus we met, I guess, was about twenty feet in front of the car (the Ford) before we ever saw it, and he started to turn, but this bus passed us before we hit the small car. I don't know exactly how far he was the time I discovered the Ford car—how close the two buses were together—I guess it would be about twenty-five or thirty feet there, my best judgment."

There was evidence in rebuttal, in contradiction of the testimony that plaintiff stated to those present on the occasion, that the Ford was being backed on the highway for the purpose of turning toward Verbena.

In these circumstances the only reasonable conclusion as to the cause of the collision is that in meeting the south-bound bus the attention of the driver of the bus causing the injury was attracted by the south-bound bus, and for the moment he inadvertently relaxed his vigilance in keeping a lookout ahead for obstructions on the highway in the path of his vehicle, and, as a proximate consequence,

he failed to discover the Ford automobile in time to avert the collision. This statement, of course, assumes that the north-bound bus was properly constructed and equipped with such appliances and contrivances as are in practical use by well-regulated bus lines, such as have been proved by use and experience as, reasonably adapted to the purposes of manipulating and controlling such vehicles of travel. Tombigbee Valley R. Co. v. Howard, 185 Ala. 612, 613, 64 So. 338. It also assumes that the driver was competent, and that, before his attention was momentarily attracted to the passing bus, he was keeping a proper lookout. As to these matters, however, the evidence is silent.

The evidence, as a whole, made the case one for the jury, and the affirmative charge was refused without error.

Charge 2, refused to the defendant, assumes as facts that the Ford did not have a red light on the rear, and that this was the sole proximate cause of the collision.

Charge 3 assumes that the Ford was stopped, parked, or was backing on the highway, and was well refused.

If it can be said that there was evidence of wantonness, which we doubt, it only appeared as a part of the res gestæ, and on the authority of Scott v. L. & N. R. R. Co., 217 Ala. 255, 115 So. 171, this justified the refusal of charges 4 and 6, which related to the counts of the complaint withdrawn.

The principles embodied in refused charge 7 were fully and clearly stated in the court's oral charge and said charge was refused without error.

Charge 8 was refused without error, for the use of "believe" instead of "reasonably satisfied." Birmingham Belt R. R. Co. v. Nelson, 216 Ala. 149, 112 So. 422.

If there was any merit in ground 2 of defendant's motion for a new trial, its averments were not sustained by the evidence— defendant's affidavits do not appear in the bill of exceptions—and plaintiff's affidavits which are set out in the bill of exceptions disproves the averments of the motion.

The testimony of the professional witnesses in respect to the nature and extent of the plaintiff's injuries—whether or not they are temporary or permanent—is in sharp conflict. Some of this evidence goes to show permanent injury to plaintiff's spine, and, if believed, warranted the quantum of damages assessed, and according to the judgment of the trial court who saw and heard the witnesses testify is due weight, it cannot be affirmed here that the damages were excessive, nor that the "preponderance of the evidence against the verdict is so decided as

to clearly convince the court that it is wrong and unjust." Cobb v. Malone, 92 Ala. 630, 9 So. 738; Southern Rwy. Co. v. Kirsch, 150 Ala. 659, 43 So. 796.

The plaintiff's objection to the question put by defendant to its witness Kimbrough, the basis for assignment of error 9, was sustained without error. The witness was not shown to possess the requisite qualifications to give his opinion on the subject of the question. Alabama Great Southern Rwy. v. Burgess, 119 Ala. 555, 25 So. 251, 72 Am. St. Rep. 943; Choate v. Southern Rwy. Co., 119 Ala. 611, 24 So. 373; Reaves v. Maybank, 193 Ala. 614, 69 So. 137.

In the last-cited case the question was on cross-examination, and a general objection thereto, stating no grounds, was overruled by the trial court, and the qualification of the witness was assumed on appeal.

This disposes of the questions presented by the assignments of error.

The proceeding of the trial court being free from error, the judgment will be affirmed. It is so ordered.

Affirmed.

ANDERSON, C. J., and SAYRE and THOMAS, JJ., concur.