145 So. 663

**BERRY v. DANNELLY.**

2 Div. 14.

Supreme Court of Alabama.
Nov. 25, 1932.

Rehearing Denied Jan. 27, 1933.

152

S. F. Hobbs, of Selma, for appellee.

J. M. Bonner, of Camden, and Coleman, Spain, Stewart & Davies, of Birmingham, for appellant.

**BROWN, J.**

This action is by the personal representative of Pat M. Dannelly, deceased, against the appellant, under the Homicide Act, section

5696 of the Code 1923, for negligently causing his death.

The complaint, consisting of a single count, alleges that, while said Dannelly was riding with the defendant as a guest in defendant's automobile, which the defendant was then and there driving on a public highway, the defendant so negligently drove or operated said automobile that it collided with an automobile truck or other vehicle then and there on said highway, and as a proximate consequence said Dannelly sustained personal injuries from which he died, and that said injuries and death "were proximately caused by the negligence of defendant in the driving or operation of said automobile."

The plea was the general issue, "not guilty."

The evidence is without dispute that on the evening of November 19, 1931, about 5:30 o'clock the defendant, while driving his automobile on the Montgomery-Mobile highway, some ten or twelve miles south of Montgomery, with the said Dannelly as a guest in his automobile, drove or allowed his automobile to run into the rear of a truck loaded with cattle, and as a proximate consequence Dannelly was seriously injured, and that said injury caused his death.

The evidence offered by the plaintiff tended to show that the truck, in charge of one Davis, but being driven by a chauffeur, was proceeding south to the right of the middle line of the highway, in the same direction defendant was going, and was traveling between twelve and twenty miles per hour; that the truck was equipped with head and tail lights burning.

The evidence offered by the defendant tended to show that the truck was standing on the highway, to the right of the median line, with the right rear wheel on the margin, and there was no tail light on the truck.

The evidence is further without dispute that the highway at this point was subject to heavy traffic, and that automobiles and trucks traveled thereon with great frequency; that immediately before the catastrophe a truck approached from the south, going north, and passed the Davis truck and defendant's automobile; that the lights on the truck proceeding north were exceedingly bright and were not dimmed as it approached and passed the two vehicles proceeding south. The evidence further shows that the defendant was an expert driver of an automobile.

The defendant testified: "I stopped at Bozeman's filling station to get gas. * * * About a mile south of that place we had an accident with the truck of J. L. Davis. Both of my head lights were burning and in proper condition. About in front of the house of the witness Brown the road makes a slight turn down a little slope, it turns slightly to the left and then back to the right, and up a little rise. From the bottom of the dip in

the road to the top of the hill it was practically a straight line. I didn't take any measurements, but would presume that it is 300 yards or 250; that is from the bottom of the dip to the top of the rise where I first saw the lights. That is about seventy-five yards back towards Montgomery, and from that point on it was straight. I was driving about thirty miles an hour; it could have been slightly more or less. * * * I saw another car approaching us. I first saw the glare of the light behind the hill. When it got close it appeared to be a glaring light. I was momentarily blinded, just before the car passed me and got up close. The accident happened pretty soon after I passed that car. I was on my right hand side of the road and *was looking at the road all the time.* When the car passed us we crashed into the truck. *I saw no obstruction, a truck or anything else, in the road just prior to the accident. I saw no tail light in front of me."* (Italics supplied.)

The defendant here asked the witness the following question: "Q. If there had been one burning could you have seen it?" Objection was sustained to this question, and defendant reserved an exception.

The defendant further testified: *"There was no tail light burning on the truck. I was looking in that direction. * * * As I regained consciousness I found that Judge Dannelly was in distress."* (Italics supplied.)

Defendant's counsel then asked him: "Q. What was he saying?" The court sustained plaintiff's objection to this question, and defendant excepted.

The defendant further testified: *"When I became blinded I removed my foot from the accelerator and pulled to the right, toward the curb as far as I dared."* (Italics supplied.)

Defendant's counsel here asked the witness: "Was there any time to do anything other than that?" The court sustained an objection to this question, and defendant reserved an exception.

The defendant further testified: "I did not say to him [Davis] that I did not blame him."

And on cross-examination: "I did tell him that I was blinded by the lights on the approaching car, *and told him that I was watching the curb.* I had my lights on full. I don't remember whether I ever dimmed them or not. When I took my foot off the accelerator *I did not kick the clutch and did not put on the brakes.* * * * The head lights throw a light far out in front. * * * The crash came very shortly after I was blinded. In less time than it has taken you to tell it. A. Yes," etc. (Italics supplied.)

And on his redirect examination: "From my present knowledge of the road, which I have looked over since, I could have been blinded in that dip in the road. I didn't know

there was a dip in the road in the darkness. The place of the collision was about seventy-five yards south of the dip in the road, in my judgment. I didn't measure it. I *did not see the truck before the collision. I didn't see it until I stopped.*" (Italics supplied.)

While, as a general rule, a traveler on a public highway who has no knowledge of an obstruction on the highway, or knowledge of facts and circumstances sufficient to put him on notice, has the right to assume that it is clear of permanent or semipermanent obstructions (Morgan Hill Paving Co. v. Fonville, 218 Ala. 566, 119 So. 610; City of Huntsville v. Phillips, 191 Ala. 524, 67 So. 664), yet we know of no rule of law or logic that justifies him in assuming that such highway is not occupied by other vehicles or travelers, and he is under legal duty to use the care of an ordinarily prudent man to avoid collision with others exercising their lawful rights in the use of the highway (St. Louis-San Francisco R. Co. v. Guthrie, 216 Ala. 613, 114 So. 215, 56 A. L. R. 1110).

If the defendant was constantly watching the road ahead, as he testified, it is difficult to understand how he failed to discover the presence of Davis' truck in time to avert the collision. In the circumstances, he not only had the aid of the headlights on his car, but the aid of the bright lights on the truck that approached and passed from the south, which, it would seem, were bound to disclose the presence of the Davis truck as it approached and passed.

The more reasonable inference is that defendant, in his effort to steer clear of the truck approaching from the south by steering his car as near to the curb on his right as he "dared," to use his language, relaxed his vigilance in keeping a lookout ahead within the range of the shaft of light cast by the lamps of his automobile, and thus failed to discover the presence of the truck of Davis immediately ahead.

The evidence is without dispute that defendant made no effort to stop, but merely took his foot off the accelerator and allowed his automobile, which was moving forward at a rate of thirty miles per hour, to coast until it ran into the rear of the truck.

The evidence presented a case for jury decision, and justified the refusal of the general affirmative charge requested by the defendant. Langley Bus Co. v. Messer, 222 Ala. 533, 133 So. 287.

Charge 2, asserting that plaintiff would not be entitled to recover if the jury was reasonably satisfied that Dannelly received his injury as the result of a "mere accident," was refused without error. Smith v. Baggett, 218 Ala. 227, 118 So. 283; Loreno v. Ross, 222 Ala. 567, 133 So. 251; Grauer v. Alabama Great Southern R. Co., 209 Ala. 568,

96 So. 915; Alabama Produce Co. et al. v. Smith, 224 Ala. 688, 141 So. 674, 675.

The proposition of law asserted by defendant's refused charge 11 was substantially given as applicable to the evidence in given charge 13; therefore reversible error was not committed in refusing charge 11. Moreover, this charge asserts as a matter of law that defendant was under no duty to keep a lookout, although the circumstances were such that reasonable care would require constant vigilance in looking out for any and all obstructions, and was well refused.

Charge 12, refused to the defendant, in asserting as a matter of law that, "if you are reasonably satisfied from the evidence that the truck with which the defendant's automobile collided did not at the time of and immediately prior to said collision carry on its rear such red light, this would constitute an unusual or extraordinary obstruction to the movement or operation of the defendant's automobile over and upon said highway," was invasive of the province of the jury, and was properly refused.

Charge 10 was properly refused in assuming the absence of negligence on the part of the defendant and that such negligence concurred with the negligence of the driver of the truck in proximately causing the injury and death. Alabama Power Co. v. Bass, 218 Ala. 586, 119 So. 625, 63 A. L. R. 1; Hall v. Seaboard Air Line R. Co., 211 Ala. 602, 100 So. 890; Western Railway of Alabama v. Sistrunk, 85 Ala. 352, 5 So. 79; Montgomery Light & Water Power Co. v. Thombs, 204 Ala. 678, 87 So. 205.

The motion of the defendant to withdraw the case from the trial calendar and continue it was addressed to the sound discretion of the court, which is not subject to review except for gross abuse. Knowles v. Blue, 209 Ala. 27, 95 So. 481; Sovereign Camp, W. O. W., v. Gay, 217 Ala. 543, 117 So. 78. Such abuse cannot be affirmed on the record before us.

If, on the showing made to the court, the defendant concluded that any one or more of the jurors were not competent because of bias or prejudice, his remedy was to either challenge the particular juror or jurors for cause, or strike such juror or jurors in selecting the jury for the trial. O'Rear v. State, 188 Ala. 71, 66 So. 81.

Conceding that the predicate for the question to the defendant, "If there had been one burning could you have seen it?" shows that the witness actually knew that the light could have been seen, and that within the rule of our cases (Republic I. & S. Co. v. Passafume, 181 Ala. 463, 61 So. 327) it was error to sustain the objection, no injury resulted therefrom, as the witness was subsequently permitted to testify that "there was no tail

light burning on the truck." (Jones v. Keith, 223 Ala. 36, 134 So. 630).

The same is true as to the ruling of the court in respect to the question to defendant, "Was there any time to do any thing other than that?" On the redirect examination, defendant testified: "At that point I took my foot off the accelerator, turned to the right and tried to get the car under control."

Whether or not the defendant had the car under control at this juncture was wholly immaterial in view of the undisputed evidence that he caused or allowed it to immediately collide with the truck.

■ If it be conceded that what the party injured, Dannelly, was saying immediately after the collision, when defendant discovered he was injured and in distress, was of the res gestæ of the occurrence, and under the rule of Alverson v. Little Cahaba Coal Co., 201 Ala. 123, 77 So. 547, and other cases of like import, it was permissible for the defendant to offer evidence of Dannelly's declarations, we are not advised by the record what those declarations were, and are not able to affirm that the ruling of the court sustaining the objection, though erroneous, probably injuriously affected the right of the appellant, upon whom rested the burden of showing, not only error, but that error probably prejudicially affected his rights. Dorough v. Alabama Great Southern R. Co., 221 Ala. 305, 128 So. 602.

This rule, requiring the appellant to show error and probable injury is not abrogated by the provisions of the Act of September 9, 1927, Acts 1927, page 636. Flowers v. Graves et al., 220 Ala. 445, 125 So. 659.

Nor can we affirm that the verdict of the jury was contrary to the great weight of the evidence (Cobb v. Malone & Collins, 92 Ala. 630, 9 So. 738), or that the verdict of the jury was affected by prejudice or bias.

This disposes of all questions argued, and, finding no reversible errors, the judgment will be affirmed.

Affirmed.

### On Rehearing.

■ The relevancy of the question asked the defendant by his counsel, and to which objection was sustained, "If there had been one burning could you have seen it?" was to show that the tail lamp, if there was one on the Davis truck, was not lighted. The defendant testified in respect to this inquiry: "I was on the right hand side of the road and was looking at the road all the time. When the car passed us we crashed into the truck. I saw no obstruction, a truck or anything else, in the road just prior to the accident. I saw no tail light in front of me. * * * there was no tail light burning on the truck. I was looking in that direction." This fully answered the question to which the objection was sustained, and, moreover, an affirmative answer of the witness in the light of his testimony would have been, at most, a mere conclusion.

The question held to be relevant and material in Morgan Hill Paving Co. v. Fonville, 222 Ala. 120, 130 So. 807, was *how far* the witness could see the unlighted barricade, "as he came out of that curve going on down the hill, down the decline." This statement differentiates the holding in that case from the case at bar, and renders that case as inapt to sustain the contention that the court erred herein to appellant's injury.

The defendant testified: "When I became blinded I removed my foot from the accelerator and pulled to the right * * * as far as I dared. * * * When I took my foot off the accelerator I did not kick the clutch and did not put on the brake. * * * The crash came very shortly after I was blinded; in less time than it has taken to tell it. * * * I did not see the truck before the collision. I didn't see it until I stopped." In these circumstances, if defendant had had time to do anything other than what he did, he certainly did not know or apprehend the necessity for taking further preventive action to stop the car in avoidance of the collision, and it is not reasonable to assume that he would have done so, and therefore error to reverse cannot be predicated on the action of the court in sustaining the plaintiff's objection to the question, "Was there any time to do any thing other than that?" If the testimony had shown that defendant saw the truck and appreciate its proximity to his car and the imminent danger of collision, a different question would be presented.

■ For the same reason, the refusal of the court to allow the defendant to answer the question, "At the time of the accident did you have the car under control?" was without injury.

In Penton v. Penton, 223 Ala. 282, 135 So. 481, 483, the suit was by the wife against the husband, and the testimony was to the effect that the wife was operating the car and just immediately before the accident the husband interfered with her operation, and the question, "In your best judgment, you had control of the car, * * * you say?" was held proper as tending to show that the interference of the husband was negligence proximately contributing to the injury.

■ In the absence of a plea of contributory negligence, the question asked the defendant, "Was Judge Dannelly looking ahead immediately before the accident?" called for immaterial testimony.

The witness Godbold testified on cross-examination: "I am one of the attorneys in this case. I have a financial interest in the result of this case."

Defendant's counsel in arguing the case to the jury said: "Mr. Godbold has testified that he is financially interested in the result of this suit. *It is common knowledge that employment contracts in cases, like this provide for a fee of* ———." On objection to this argument, the court stated: "He may argue that Mr. Godbold has a financial interest in the result of this suit, but there is no evidence before you about the fees that attorneys will receive in this case." There is nothing in this ruling upon which to predicate error. (Italics supplied.)

The application is without merit, and is due to be overruled. It is so ordered.

Application overruled.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.