148 So. 154

## BROWN FUNERAL HOMES & INS. CO. v. BAUGHN.

### 6 Div. 253.

Supreme Court of Alabama.

March 16, 1933.

Rehearing Denied May 25, 1933.

R. B. Evins, of Birmingham, and Huey, Welch & Stone, of Bessemer, for appellant.

Ross, Bumgardner, Ross & Ross, of Bessemer, for appellee.

THOMAS, Justice.

█ This case was submitted on count 3. The action of the trial court in overruling the demurrer to count 3 is not presented in argument, and will not be here considered. Georgia Cotton Co. v. Lee, 196 Ala. 599, 72 So. 158.

The refusal of affirmative instructions requested by defendant is urged. The rules as to the giving and refusing of the general affirmative charge are well understood. McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135.

██ It is true that he who affirms negligence has the burden of showing the causal connection between the injury and the negligence or omission charged. Koger v. Roden Coal Co., 197 Ala. 473, 73 So. 33. And the mere possibility that the negligence of defendant caused the injury, without evidence thereof, is not sufficient to take the case to the jury, or support a verdict for plaintiff. Connors-Weyman Steel Co. v. Kilgore, 202 Ala. 372, 80 So. 454; St. Louis & S. F. R. Co. v. Dorman, 205 Ala. 609, 615, 89 So. 70, and authorities; Ivey v. Railway Fuel Co., 211 Ala. 10, 99 So. 177.

The case of Lawson v. Mobile Electric Co.,

204 Ala. 318, 85 So. 257, dealt with the burden of proof and was to the effect that in the absence of evidence of actual negligence, evidence of due care may present a question for the court, in the sense that the mere presumption involved in the res ipsa loquitur doctrine will not be the effect of evidence, so as to raise a conflict for decision by the jury. Langley Bus Co. v. Messer, 222 Ala. 533, 535, 133 So. 287.

█ It is further established that while the jury cannot be required to accept expert testimony, yet it may do so in drawing the reasonable inferences of fact on which the verdict must rest. In this case the evidence goes further than the rule above indicated; there is the expert testimony of witnesses Gains and Griffin that was for consideration by the jury with the other evidence.

█ In Gains' testimony there is a statement to the effect that in pneumonia cases purging sometimes occurs, and sometimes discoloration appears; that where there is discoloration this condition "shows up before the embalmer ever touches" the body; that "Frequently pneumonia cases show places on the body of dark discoloration. Sometimes they show splotches on the face; sometimes they show bluish color, and these conditions result when the embalmer has done his best, in fact, these conditions show up before the embalmer ever touches it. In my experience I have had them before I had ever touched the body; this occurs even when we get the body fifteen or twenty minutes or an hour or an hour and a half after the death, even in such cases discoloration is there when I get the body and it cannot be removed. This is not infrequent." There was testimony that there were no discolorations when the body was delivered to the embalmer, or for a time after the body was returned to appellee's home. And the reasonable inferences to be drawn from Gains' testimony were that these were some of the evidences of improper embalming.

There was yet another phase of the evidence—that of offensive odors emanating from the body within a short time after its treatment by. the embalmer. As an expert the witness Gains testified that a body properly embalmed should not emit offensive odors between the hours indicated by the evidence, or within three or four hours after death, and that such condition evidenced an improper embalming of that body. To like effect was Gains' evidence as to the purging of the body from the nose and mouth in the quantities and manner indicated by the evidence; and that witness explained the cause of purging and its relation to proper embalming. He likewise explained the process of puncturing several gas pockets to relieve the pressure of gas, which will cause purging after death if not so relieved.

There are reasonable inferences that may

be drawn from the testimony of the defendant's witness Griffin, to the effect that embalming will delay decomposition in bodies that have died with pneumonia, and that they will not emit the odor of decomposition within ten or twelve hours after death if properly treated; that he was present and "did a perfect job of embalming of that body"; was assisted by a young man who "pumped the [embalming] fluid * * * aspirated the fluid into the body" while witness was "standing right there with him"; that "the young boy there is not an embalmer"; that "no one else was assisting" him in embalming the body in question; that witness "had been out of the practice of embalming until July, 1929, and this case was embalmed on May 18th, 1930." The acts of Griffin, when later called to the house, raised an inference of fact of negligence, in the first instance, in preparing the body.

There was therefore a reasonable inference to be drawn by the jury from the testimony of witnesses Gains and Griffin that if this embalmed body, within three hours, or several hours after its treatment, gave off offensive odors and purged, as indicated by other evidence, it was the result of and was proximately caused by the negligence of the embalmer in improperly preparing the body for burial. This case was within the rule announced in Langley Bus Co. v. Messer, 222 Ala. 533, 133 So. 287, and was properly submitted to the jury on the disputed facts.

■ The payment of the embalmer's fee, several days after the funeral, was not shown to be voluntary and done with such knowledge of the appellee as to prevent her recovery of the sum so paid—voluntarily paid with a full knowledge of the facts—after she was fully informed in the premises. Bower, Tax Collector, v. American L. & E. Co., 195 Ala. 572, 71 So. 100; Birmingham Water Works Co. v. Ferguson, 164 Ala. 494, 51 So. 150; Prichard v. Sweeney, 109 Ala. 651, 19 So. 730; Rutherford v. McIvor, 21 Ala. 750; Hinds v. Wiles, 12 Ala. App. 596, 68 So. 556; Lamborn v. Board of County Commissioners of County of Dickinson, 97 U. S. 181, 24 L. Ed. 926; 48 C. J. 762. She was ill, and had this attention, service, and payment made by another.

The question of recoverable damages of the nature claimed in this case has been the subject of recent discussion. F. Becker Asphaltum Roofing Co. v. Murphy, 224 Ala. 655, 141 So. 630; Alabama Water Co. v. Knowles, 220 Ala. 61, 124 So. 96; Alabama Water Service Co. v. Johnson, 223 Ala. 529, 137 So. 439; Birmingham Water Works Co. v. Ferguson, supra; Jefferson Fertilizer Co. v. Rich, 182 Ala. 633, 62 So. 40; Birmingham Water Works Co. v. Martini, 2 Ala. App. 652, 56 So. 830;

Nashville, C. & St. L. Ry. Co. v. Yarbrough, 194 Ala. 162, 69 So. 582.

■ The giving of charge 3 at the request of the defendant cured error, if such there was, in refusing charge A, under count 3 on which the trial was had. Bradley v. Walker, 207 Ala. 701, 93 So. 634.

■ The errors assigned, Nos. 6, 7, 8, 9, and 10, challenge the action of the trial court in overruling defendant's objections to certain testimony of the witness Mrs. Catherine Turner, called by the plaintiff, and who testified in part as follows:

"That night between 10 and 12 o'clock I experienced a disagreeable odor there in the house while we were there. I was in the room where the body was. The odor was disagreeable. It was a sickening smell."

Thereupon plaintiff's attorney asked the witness this question:

"Have you ever smelled decomposed meat; what we commonly call spoiled meat?"

The defendant there and then objected to said question on the ground that it calls for a comparison. The court overruled the objection and to this action of the court the defendant there and then in open court duly reserved an exception. The witness answered:

"Yes sir."

Witness was further asked over the objection and exception of the defendant, "Well, how did this odor smell with reference to the smell of decomposed meat?" In this there was no reversible error. It was merely calling for an effort to explain what the witness meant by the words "was unbearable," a "sickening smell," and was illustrated by the witness saying, "Yes, sir, but it smelled worse than that," meaning by the context that it smelled different from and worse than the odor referred to in the question.

■ In passing upon the motion for a new trial and the grounds thereof, that the judgment was excessive, it is therefore considered that unless the appellee files with the clerk of this court, within thirty days from this date, a remittitur of all damages in excess of $1,-000, the judgment of the circuit court will be reversed and annulled, and the cause remanded to the circuit court for further proceedings therein.

Upon the filing of said remittitur within said time, judgment of the circuit court will be affirmed, with interest from the date of the judgment of the circuit court.

Affirmed conditionally.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.