116 So.2d 912

Altie Belle **HOLMES**

v.

**BIRMINGHAM TRANSIT CO.**

**6 Div. 348.**

Supreme Court of Alabama.

Aug. 20, 1959.

Rehearing Denied Sept. 17, 1959.

Further Rehearing Denied Jan. 21, 1960.

Clifford Emond, Sr., Birmingham, for appellant.

Deramus, Fitts & Johnston and Jas. C. Barton, Birmingham, for appellee.

STAKELY, Justice.

The application for rehearing was filed in this court too late by one day. Ordinarily this court would not consider it and would dismiss the same. However, upon reading the application for rehearing, it seems to us that there is a just criticism of the opinion which should be corrected. The opinion did not sufficiently consider the relationship of passenger and carrier between the plaintiff and the defendant. Accordingly, the writer on his own motion has placed the case on the rehearing docket. As a result the original opinion is withdrawn and this opinion is substituted in lieu thereof.

This is a suit brought by Altie Belle Holmes (appellant) against Birmingham Transit Company, a corporation (appellee), for injuries alleged to have been sustained by the appellant (plaintiff below), while a passenger for hire on a bus operated by the appellee (defendant below), on January 23, 1957, at a stop on appellee's bus route known as Elizabeth Station in Birmingham, Jefferson County, Alabama.

The appellee was a common carrier of passengers for hire operating a transportation system in the City of Birmingham, Alabama.

The plaintiff alleged that at said time and place as she was alighting from the said bus the defendant, acting by and through its agent, servant or employee who was acting within the line and scope of his employment as such, negligently operated said bus and as a proximate consequence of said negligence the plaintiff sustained the injuries for which she sues.

The pleading was in short by consent, including the general issue with leave to give in evidence any matter which if well pleaded would be admissible in defense of the action.

Upon conclusion of the evidence the defendant requested the affirmative charge in writing which was refused by the court. The court thereupon submitted the case to the jury which returned a verdict in favor of the defendant. There was a motion for a new trial which the court overruled. This appeal followed.

We are not intending to show that the defendant was entitled to the affirmative charge as might have been inferred from the original opinion, but that the case went to the jury without any presumption arising either from the doctrine of res ipsa loquitur or from the relationship of carrier and passenger.

The evidence showed substantially in part the following. Drew McKenzie, a witness for the plaintiff, testified, among other things, that he was about to board the bus involved in the accident at Elizabeth Station, that the accident occurred around 8:00 a. m. and that he did not know the plaintiff before the accident occurred. He testified in substance that he saw Mrs. Holmes "standing right there by the bus door" before the accident occurred and that the bus "made a kind of a move like

that" and then he "saw her come out of the door on her stomach", "it made a kind of a little 'vary' like that, and when I seen her she had done fell out on the ground, did it so quick." "The bus kind of 'varied' a little bit, just like that, it didn't go nowhere, just kind of 'varied' like that. I saw her come out and hit this concrete." The witness further testified that "that bus kind of made a little variance like that and she come tumbling out of there." The witness testified the bus doors were open at the time the bus moved.

The witness Emma Brown testified for the plaintiff in substance that she was on her way to work at the time of the accident and was waiting at the bus stop to board the bus at the time of the occurrence of this accident. She testified that she was looking right at Mrs. Holmes when she fell from the bus. She testified that "Mrs. Holmes began to step off the bus and the bus gave a jerk and she fell off." She testified that she picked the plaintiff up and sat her on a bench and brushed her coat off, that she didn't know Mrs. Holmes and that thereafter she boarded the bus and that the plaintiff "hobbled on to school." She testified that "the bus jerked" and that thereafter she boarded the bus and went on to her work.

Mrs. Belle Agnew Horton, witness for the plaintiff, testified in substance that she lived in Birmingham and that her occupation was school teacher and that she taught at Lee School in West End. She further testified that she remembered the occasion in January, 1957, when Mrs. Holmes complained of injuries a little after 8:00 in the morning and that she had observed Mrs. Holmes on the couch in the restroom by herself, putting cold packs on her leg and she looked sick, like she was in pain.

The plaintiff, Altie Belle Holmes, testified in substance that she was sixty-eight years of age and worked for the Board of Education as a school teacher. She had lived at the Ridgely Apartments in Birmingham for nearly thirty years and had been employed by the board of education as a teacher since 1928 with the exception of one year when she worked for the FBI in Washington. Her teaching was confined to the 4th and 5th grades and sometimes the 6th grade. Her teaching was always in the elementary school.

She further testified that on the morning of the accident it was cold and misting snow and spitting a little rain or something and that she wore a coat suit and a mouton coat. She testified that she had a soft velvet pocketbook in her hand and a school register which looked something like a folder and a set of papers belonging to the class. She further testified that when the bus stopped at Elizabeth Station, "I just got up to get off and I got up to the door, why something jerked, or something, and I went out and knocked the breath out of me." She further testified, "When I fell something gave under me, jerked something—it was just as quick as lightning." The plaintiff further testified that as far as she remembered, she was holding that right pole, she was holding to that on the occasion when she was thrown from the bus. She further testified that after she got up out of the street she was sick at her stomach and was nauseated and then went to the school building.

On cross examination the plaintiff further testified that as far as she knew the bus had stopped before she got up out of her seat to get off the bus and that the bus was stopped as she proceeded toward the front door. She further testified that she did not step down to the second step from the floor of the bus when she fell. "I was in the act of stepping." She also testified that so far as she remembered she had hold of a rail there with her right hand. She did not remember whether she stepped down with the right foot or with the left foot and that she was in the act of stepping off with the right or left foot to the second step when she fell. Plaintiff further testified that in her own mind she would not be certain that the bus moved on that occasion but she thought it did. She testified that

she was wearing a type of shoe that is described as a walking shoe.

R. B. King, a witness for the defendant, testified substantially as follows. He was employed by the defendant as an inspector and that there was an occasion when he was called upon to inspect trolley bus No. 211 in the year 1957 and that he made an inspection of that bus on January 24, 1957. The witness further testified that he checked the doors, front entrance, platform, control locking devices and other parts of the bus and found them to be in "good condition", that he had been engaged in this business for a number of years and explained the details of the work of the particular mechanisms with which the bus was allegedly equipped.

Betty Joy Gable, a witness for the defendant, testified substantially as follows: That she was a prospective passenger on this particular bus at Elizabeth Station at the time of the alleged accident. She identified pictures representing the scene at Elizabeth Station and where she was standing and other physical aspects of the pictures. She testified further that the bus did not move from the time it came up there and stopped until the time Mrs. Holmes was beginning to alight. She testified further that the bus did not jerk, slide forward, sideways or make any other movement whatsoever.

James Houston Little, a witness for the defendant, testified substantially as follows: That he was employed by the defendant as a bus driver and was the operator of the trolley bus involved in this accident on January 23, 1957. He identified defendant's Exhibit No. 10 as a picture of the bus from the inside looking downward to the ground, showing two steps leading outward from the bus. The witness further testified with reference to the operation of the bus at various locations on the morning of the accident and prior to the accident and the procedure followed in testing the bus before it was taken out in the morning. Witness further testified that he had made nu-

merous stops that morning prior to the accident and that he had found nothing about the bus which was in improper operating order. He further testified with reference to stopping at Elizabeth Station just prior to the accident and the procedure followed there with reference to opening the doors for the discharge of passengers. The witness testified that he heard the "commotion" of the plaintiff falling from the bus, "heard an exclamation" and looked and the plaintiff was in the process of falling out the door off the bottom step, that plaintiff then complained of being nauseated and was carried over to a waiting bench where she was seated and then she was assisted up and was walked around a little bit. Witness further testified that on that occasion the bus did not move in any direction, forward, backward, sideways or jerk. The witness further testified:

"Q. Now, Mr. Little, do you make any pre-operation checks? Did you make any pre-operation check of that trolley bus before you went out on the line? A. I did.

"Q. Is it a normal procedure? A. It is.

"Q. Is it pursuant to any Company rule? A. It is.

"Q. All right, sir. Now, will you explain to the Court and to these gentlemen just what you did when you arrived at your bus 211 on that morning?"

The witness then proceeded to state in detail the various things which were done by him to see if the door controls and the bus was in good operating condition. After stating these various steps which he took, the witness then continued:

"Q. All right, sir. Did you do all of those things on that morning? A. Yes, sir, I did.

"Q. Is that a one, two, three step procedure that you take? A. It is the ordinary procedure. In other

words, that is the procedure to see if you can carry a bus out to work, to see if it is operational—

"Q. Will you state to these gentlemen whether or not that bus, and all of those things that you checked, were in good and proper operating condition on that morning? A. It was.

"Q. All right, sir. Now, from the time you left your yard out there, I believe you said a little after 6:00, until you arrived down at Elizabeth Station, did you notice anything about the operation of that bus, those doors, brakes, or anything else that was in improper operating condition? A. Nothing whatever.

"Q. Alright, sir. At each—I will ask you whether or not if there was any improper operation after you made your inspection and before you arrived down there at the Elizabeth station, some hour or so later, if there would be any way for you to know about it? A. There would.

"Q. Would you explain to the jury why and how you would know about it, if anything went wrong with the doors and mechanism, and so forth?"

The witness then testified how his examination of the bus would show that it was in good operating condition. The witness then continued.

"Q. All right, sir. That morning before you arrived at Elizabeth Station, did you do that at each stop you made? A. Every stop, yes, sir.

"Q. Did you make one or many stops? A. Well, a hundred or so. In other words, that is a heavy trip.

"Q. All right. A. Practically every stop.

"Q. All right, as those doors, on each one of those stops, as they began to close and you pressed down on your power pedal, did that bus start forward before those doors came to a complete—became completely closed? A. No, sir. They come to a complete close, then there is a release of air, then after that release of air, then you've got power and it takes off.

"Q. All right, sir. In other words, you have got no juice in your motor until those doors are completely closed. A. That's right.

"Q. And that bus was in operating condition that morning? A. It was."

Mr. Little further testified that the bus did not move in any direction when Mrs. Holmes fell.

I. Error is predicated on the action of the trial court in overruling plaintiff's objection to the argument of counsel for the defendant to the jury in connection with the plaintiff's burden of proof. In this connection we quote from the record as follows:

"Mr. Barton: He says the Transit Company, Mr. Little, Mr. King, have not said how that thing happened, why that bus jerked. We say it didn't jerk, but the burden of proof is on him to show whether it jerked and what made it jerk."

It is the insistence of the appellant that the foregoing statement as to the burden of proof is erroneous. It is the further insistence of the appellant that when the plaintiff offered proof that the bus jerked as she was alighting and threw her to the ground, the burden of proof thereafter shifted to the defendant and there was no burden on her to prove "what made it jerk." We think it is well at this point to summarize briefly the pertinent evidence.

The plaintiff offered evidence tending to show that as she was alighting from the bus the bus jerked and threw her to the ground. However, evidence offered by the defendant tended to show that there was no jerk of the bus. The defendant, however, did more than merely deny that there was no

jerk of the bus. The defendant also showed by its testimony that this particular bus was equipped with brake and power interlocking safety devices which were properly operating on the occasion and had been so operating on that morning for one hundred previous stops and continued to operate properly thereafter.

■ We might add that there was no evidence of actual negligence. In other words, there was no proof that any agent, servant or employee of the defendant did or failed to do any specific act in the exercise of due care as a proximate result of which plaintiff was caused to fall. It has been many times decided by this court that the mere happening of an accident does not give rise to a presumption of negligence. It seems that the applicable rule is that where the plaintiff adduced evidence showing the fact of the accident and the attendant circumstances and that it was caused by the defendant's bus operated and in charge of defendant's agent or servant and is such as in the ordinary course of things does not happen without negligence, this was sufficient prima facie to shift to the defendant the burden of going forward with the evidence—res ipsa loquitur. Langley Bus Co. v. Messer, 222 Ala. 533, 133 So. 287.

However, the defendant may rebut the inference of negligence arising from the plaintiff's evidence by showing that the bus was properly equipped with approved devices and appliances to enable the operator to so operate the bus as to check its speed, close its doors or stop it if needs be.

The proof in rebuttal of the inference of negligence arising from the proof of the accident and attending circumstances, if believed, without dispute shows that the defendant was free from negligence. Of course, there was still in the case the evidence of the plaintiff tending to show that the bus jerked when the plaintiff was attempting to alight from the bus. Under these circumstances, the question of negligence was one of fact for the jury. See Langley Bus Co. v. Messer, 222 Ala. 533, 133 So. 287; Lawson v. Mobile Electric Co., 204 Ala. 318, 85 So. 257.

■ There is no evidence in this case of a specific defect in any of the equipment of the defendant. Hence, it cannot be said that the burden of proof was cast by law on the defendant by mere proof of the accident. Southeastern Greyhound Lines v. Callahan, 244 Ala. 449, 13 So.2d 660, and cases cited; Greyhound Corp. v. Brown, Ala., 113 So.2d 916.[1] In other words, as the evidence was presented the burden of proof was on the plaintiff to show whether the bus jerked and what made it jerk. This being true, the court ruled correctly in overruling plaintiff's objection to the argument of counsel for the defendant.

II. It is argued that the trial court erred in giving to the jury at the request of the appellee written Charge No. 12 reading as follows:

"The court charges the jury that there is no presumption of negligence on the part of the defendant or its operator arising from the fact, if it be a fact, that the plaintiff was injured on the occasion complained of."

■ "Not in every case of injury to a passenger does a presumption of negligence on the part of the carrier arise from the happening of the injury." Central of Georgia R. Co. v. Brown, 165 Ala. 493, 51 So. 565, 566. To put it as briefly as possible, where an injury happens to a passenger while being transported by a carrier, each case stands on its own facts or circumstances so far as any presumption of negligence is concerned. Central of Georgia R. Co. v. Brown, supra.

■ There was not sufficient evidence of the circumstances of the occurrence complained of to raise the presumption of negligence under the maxim res ipsa loquitur.

1. 269 Ala. 520.

In other words, there is no evidence in this case that a movement of the bus must necessarily result solely from the negligence imputable to the defendant. There is no evidence in this case, as there was in Birmingham Electric Co. v. Davis, 244 Ala. 338, 13 So.2d 888, 889, that: "* * * such things do not happen on streetcars, properly operated * * *" or that such an occurrence, in the language of the court, "* * * in the ordinary course of things, does not happen, without negligence * *"

Neither the plaintiff's witnesses nor the defendant's witnesses testified to any such proposition. Defendant's testimony is to the point that this particular bus on this particular occasion did not move. Further, it is the uncontroverted, credible testimony that this particular bus was equipped with brake and power interlocking safety devices which were properly operating on the occasion complained of, had been so operating on that morning for one hundred stops and continued to properly operate thereafter. Therefore, one vital element of the circumstances to be proven was not proved. Without this no presumption arose. Lawson v. Mobile Electric Co., 204 Ala. 318, 85 So. 257; Langley Bus Co. v. Messer, 222 Ala. 533, 133 So. 287.

There was no evidence of actual negligence. We mean to say that there was no evidence that any agent, servant or employee of the defendant did or failed to do any specific act in the exercise of due care, as a proximate result of which plaintiff was caused to fall. As pointed out above, there was no evidence of a specific defect in any of the equipment of the defendant. Accordingly, under the evidence no presumption of negligence having arisen, the burden of proof was on the plaintiff to prove to the reasonable satisfaction of the jury, not only that the bus moved on the occasion complained of, but what made it jerk.

■ Assuming for the sake of argument that a presumption of negligence did arise, however, such presumption arose by the plaintiff showing that she was a fare paying passenger on a bus under the control of the defendant and the bus moved, while stopped for her to alight, causing her to fall. The presumption merely had the effect of shifting the responsibility at the moment in the trial of this cause to the defendant to go forward with the evidence. As stated up to this point in the evidence, no actual negligence was proved. Merely circumstances were proved from which the appellant claims a presumption arose, but no specific act or failure to act was suggested. No specific defect in the equipment of the defendant was shown. For aught appearing some force for which the defendant was not legally responsible moved the bus, but if the presumption arose it arose under a rule, the policy of which is, that the defendant was in control of the bus and in a better position to know why it occurred and a carrier owes to its passenger the highest degree of care known to the law.

When the plaintiff rested her case, the defendant went forward with the evidence and showed that the bus did not move. At this point there was a direct conflict in the evidence as to the movement of the bus. The defendant went further, however, and rebutted the supposed inference or presumption of negligence which the plaintiff claimed arose from the circumstances shown by the plaintiff. The defendant's evidence thereafter is free from adverse inference. The uncontroverted and uncontradicted, credible testimony as to proper or due care on the part of the defendant in its rebuttal evidence was to the effect that the bus was equipped with the safety devices mentioned above which were functioning at the precise time of the occurrence. At the close of defendant's testimony, the plaintiff offered no evidence of actual negligence. As stated in Langley Bus Co. v. Messer, 222 Ala. 533, 133 So. 287, 289, by the same author of the opinion in Birmingham Electric Co. v. Davis, 244 Ala. 338, 13 So.2d 888,

"The rule applicable is, when the plaintiff adduced evidence showing the fact of the casualty, and the attendant

circumstances, that it was caused by the defendant's bus operated and in charge of the defendant's agent or servant, and is such as, in the ordinary course of things, does not happen, without negligence, this was sufficient, prima facie, to shift to the defendant the burden of going forward with the evidence—res ipsa loquitur.

"The defendant may rebut the inference of negligence arising from plaintiff's evidence by showing that the bus was properly equipped with approved devices and appliances to enable the operator to discover obstructions in its path at such distance that a collision therewith could be averted, and with braking appliances to check its speed or stop it, if needs be, and that it was properly managed and controlled— facts peculiarly within the knowledge of the defendant—and, unless the evidence in this respect is undisputed and free from adverse inferences the question of negligence is one of fact for the jury."

At the end of defendant's uncontradicted and uncontroverted rebuttal evidence, the presumption raised by the maxim res ipsa loquitur was "functus officio." Birmingham Electric Co. v. Davis, supra; Lawson v. Mobile Electric Co., supra; Alabama Power Co. v. Berry, 254 Ala. 228, 48 So.2d 231.

Black's Law Dictionary, 3rd Ed. defines "functus officio" as follows:

"Having fulfilled the function, discharged the office, or accomplished the purpose, and therefore of no further force or authority * * * has fulfilled the purpose of its creation, and is therefore of no further virtue or effect."

■ This is the phrase used by Professor Wigmore in his rationale of the doctrine of res ipsa loquitur approved by Justice Sayre in Lawson v. Mobile Electric Co., supra, and approved in Birmingham Electric Co. v. Davis, supra. To

state it as simply as possible, those authorities say that the presumption is not evidence, nor does it serve in the place of evidence after evidence to the contrary has been adduced. Lawson v. Mobile Electric Co., supra. It seems clear to us, therefore, that the appellant is under the mistaken impression that the evidence adduced in behalf of the plaintiff under the doctrine of res ipsa loquitur had the effect of raising a presumption of negligence which was inviolate and should be considered evidence of actual negligence to go to the jury in the face of an uncontroverted rebuttal.

Furthermore any presumption arising from the relationship of carrier and passenger ceased. The case was a case for the jury with the usual burden of proof on the plaintiff. Central of Georgia R. Co. v. Brown, supra; Southeastern Greyhound Lines v. Callahan, 244 Ala. 449, 13 So.2d 660; Pollard v. Williams, 238 Ala. 391, 191 So. 225. As shown above the court in the instant case sent the case to the jury.

We consider that the court committed no error in giving written Charge No. 12.

■ III. Error is based upon the giving to the jury at the request of the defendant the following written Charge No. 17:

"The Court charges the jury that if you are reasonably satisfied from the evidence in this case that the sole proximate cause of plaintiff's injuries was her failure to use due care in alighting from the trolley bus on the occasion complained of, then your verdict cannot be for the plaintiff and against the defendant."

In the case of Mobile Cab & Baggage Co., Inc. v. Armstrong, 259 Ala. 1, 65 So. 2d 192, 194, this court reversed the lower court for refusing the defendant's request for the following written charge:

"The court charges the jury that if you are reasonably satisfied from the evidence in this case that the sole and

proximate cause of the plaintiff's injury was the negligent failure of the driver of the automobile in which the plaintiff was riding to stop said automobile at the intersection of Conti with Conception Street as the law requires when the traffic signal is red, then your verdict should be for the defendant."

In this connection the court said:

"Whether or not such a charge is proper depends upon the issues and the evidence. When only primary negligence is involved, that means when the only count submitted to the jury is for primary negligence and the evidence does not justify a finding of subsequent negligence, and when a plea of contributory negligence is not applicable, a charge of a sort such as No. 9, supra, is proper, and its refusal is error to reversal if the charge is properly framed and not covered by some other given charge or the general charge of the court. That principle has quite a historical background, but it has been finally settled to that effect. The case of Williams v. Wicker, 235 Ala. 348, 179 So. 250, is directly in point, * * *."

The pleading in this case involved the submission on only a single count of simple negligence and a plea of not guilty by the defendant. It is true that a plea in short by consent would include the issue of contributory negligence, but no such issue was involved, proved, sought to be proved or even argued. The defendant's theory was that the bus did not move and if the plaintiff was negligent, then that negligence was the sole proximate cause of her fall and not merely a contributing cause to her fall. In the light of the foregoing case and the inapplicability of a plea or proof of contributory negligence, the defendant was entitled for the jury to be instructed that a verdict could not be rendered against the defendant if the jury

was reasonably satisfied from the evidence that the sole proximate cause of plaintiff's injury was her own failure to use due care generally in her failure to retain her balance because she did not avail herself of the hand rails and holding bars present.

It is obvious that the issue of subsequent negligence was not in the case and the defendant was not accused of wanton misconduct.

There was no error in this ruling.

IV. and V. Error is also predicated on the action of the court in giving Charge No. 18 and Charge No. 19. What we have said with reference to the action of the court in giving Charge No. 17 is equally applicable to the giving of Charges No. 18 and No. 19. There was no error in these rulings.

It is argued that the plaintiff was not alighting from the bus at the time she suffered her fall. On cross examination she was asked whether she had stepped down to the second step from the floor of the bus when she fell. This was her answer:

"No. I was in the act of stepping... I was in the act of leaving the bus, yes.

"Q. But, you are positive you were in the act of stepping off, either with your left foot or right, to the second step when you did fall? A. Yes."

VI. It is claimed that the court was in error in giving to the jury at the request of the appellee written Charge No. 28, reading as follows:

"The Court charges the jury that the burden is on the plaintiff to reasonably satisfy the jury as to the proof of every material allegation of the first count of her complaint, and if she has not discharged this burden to the reasonable satisfaction of every member of the jury, then you cannot find in favor of the plaintiff and against the defendant."

This charge is made the basis of assignment of error No. 7. We refer to the action of the court in giving Charge No. 6 in Jones v. Union Foundry Co., 171 Ala. 225, 55 So. 153. In that case the court held that there was no error in giving Charge No. 7 at the request of the defendant.

VII. The appellant's objection to Charges 18, 19 and 26 is that they exclude every theory of recovery by the plaintiff except proof that the bus moved on the occasion complained of. The defendant was entitled to the following charge quoted from Birmingham Electric Co. v. Shelton, 231 Ala. 110, 163 So. 633, 634:

"4. The court charges the jury that if you are not reasonably satisfied from the evidence that plaintiff's injuries were proximately caused by a movement of the streetcar you could not return a verdict for the plaintiff."

In her complaint plaintiff merely alleged generally in one count, based on simple negligence, that "the defendant * * * negligently operated said bus * * * and as a proximate consequence of said negligence the plaintiff sustained the following injuries * * *"

As we have said time and again this case was tried on the question of whether or not the bus moved. The plaintiff attempted to prove that it did. The plaintiff did not attempt to prove anything else. Under the plaintiff's theory of the case, the defendant was entitled to a charge that if the jury was reasonably satisfied that the bus did not move, then it could not return a verdict for the plaintiff. All three of the charges here referred to are obviously not in accord with the theory upon which the plaintiff tried

her case. There was no error in the action of the court in giving Charges 18, 19 and 26.

VIII. The appellant objects to the defendant's Charge No. 15 made the subject of assignment of error No. 2. This is because of the use of the word "testimony" in the charge rather than the word "evidence". In the case of Crumley v. State, 18 Ala.App. 105, 89 So. 847, 848, the court said:

"In this state 'evidence' as used in our practice is synonymous with testimony * * *"

In Boyette v. Bradley, 211 Ala. 370, 100 So. 647, 651, this charge was considered and that opinion quoted Allen v. Birmingham Southern R. Co., 210 Ala. 41, 97 So. 93, on the subject of Charge 5, which stated:

"I charge you, gentlemen of the jury, that if, after considering all of the testimony in this case, your minds are left in a state of confusion as to whether or not the plaintiff should recover in this case, you cannot find for the plaintiff."

The court stated that the giving of this charge was not error as any desired explanation could be obtained by a request for an explanatory charge.

We have examined this record with great care and find no error therein to reverse.

Affirmed.

Opinion corrected and rehearing denied.

LAWSON, SIMPSON, GOODWYN and MERRILL, JJ., concur.